(861 P.2d 1372)

No. 69,242

Lee Dillard, Sheila Dillard, and Lee Dillard as next friend of Joshua, Justin, Leah, William Jereme, and Brittani Dillard, *Appellants*, v. The Most Reverend Ignatius J. Strecker, Roman Catholic Archbishop, The Catholic Archdiocese of Kansas City in Kansas, *Appellee*.

Opinion filed October 29, 1993.

M. *Courtney Koger*, *Robert A. Horn*, and *Sally B. Surridge*, of Blackwell Sanders Matheny Weary & Lombardi, of Kansas City, Missouri, for the appellants.

*Lori R. Schultz*, of Morrison & Hecker, of Overland Park, and *Mark E. Johnson* and *R. Chrisopher Abele*, of the same firm, of Kansas City, Missouri, for the appellee.

Before PIERRON, P.J., BRAZIL, J., and JAMES J. SMITH, District Judge, assigned.

BRAZIL, J.: Lee Dillard and Lee Dillard as next friend of Joshua, Justin, Leah, William Jereme, and Brittani Dillard (the Dillards) appeal the district court decision dismissing their petition for failure to state a claim upon which relief can be granted. We affirm.

On October 12, 1990, the Most Reverend Ignatius J. Strecker, Roman Catholic Archbishop, the Catholic Archdiocese of Kansas City, Kansas, (Archbishop) contracted with A.L. Huber and Sons, Inc., (Huber) for Huber to act as a general contractor for the construction of a church and school in Leawood, Kansas. Huber subcontracted a portion of its work for the construction project to P & S Masonry, Inc. The subcontract provided that P & S Masonry would perform brick and block masonry work on the construction project as required by the specifications in the project.

Lee Dillard was employed by independent contractor P & S Masonry. On March 20, 1991, a masonry wall collapsed during construction at the project, crushing Dillard beneath it. As a result of the accident, Lee Dillard suffered serious and permanent injuries. Lee Dillard was covered by workers compensation.

At the time the accident occurred, the City of Leawood's Uniform Building Code (UBC) was in effect. Relevant to the instant case, UBC § 306(a) requires an owner to employ a special inspector to examine masonry walls under construction. On November 14, 1990, deputy building official Kenneth E. Anderson informed the architects hired by the Archbishop, Father Thomas Tank, and Randy Huber that special inspections were required to be done on the project. It was not until March 28, 1991, that the required inspections were performed.

The Dillards filed their petition, alleging that the Archbishop had breached his duty to Lee Dillard by failing to provide the required inspection and that Lee Dillard's injuries resulted from the Archbishop's breach of his duty. The Archbishop filed a motion to dismiss for failure to state a claim for negligence because he did not owe a duty to Lee Dillard as an employee of an independent contractor. The court granted the Archbishop's motion, finding that the Dillards failed to state a claim for negligence because the Archbishop did not owe a duty to an employee of an independent contractor. Consequently, the court dismissed the Dillards' petition with prejudice.

Also, the court granted the Dillards' motion for leave to amend their petition. The Dillards filed an amended petition, alleging the vicarious liability of the Archbishop. The parties stipulated that the Archbishop's motion to dismiss the Dillards' original petition would also apply to the Dillards' amended petition. The court found the amended petition also failed to state a claim upon which relief could be granted and dismissed the amended petition with prejudice. The Dillards appeal the decisions of the district court.

The Dillards first argue that the district court erred by deciding the Dillards' petition alleging the Archbishop was directly liable for Lee Dillard's injuries failed to state a claim upon which relief could be granted.

The district court granted a motion to dismiss in accordance with K.S.A. 1992 Supp. 60-212(b)(6) and K.S.A. 1992 Supp. 60-256. In pertinent part, K.S.A. 1992 Supp. 60-212(b) reads:

"If, on a motion asserting the defense provided in subsection (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in K.S.A. 60-256 and amendments thereto, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by K.S.A. 60-256 and amendments thereto."

The distinction between adjudicating a motion to dismiss and a motion for summary judgment is that, in the former, a trial court is limited to a review of the pleadings. When determining a motion for summary judgment, the trial court takes into consideration all of the facts disclosed during the discovery process.

*Beck v. Kansas Adult Authority*, 241 Kan. 13, 26, 735 P.2d 222 (1987). In the instant case, both parties filed briefs on the motion to dismiss which contained relevant case law, contracts, correspondence, building code sections, and inspection reports. Consequently, it appears matters outside the pleadings were not excluded by the court. Therefore, it was proper for the court to treat the motion to dismiss as a motion for summary judgment.

On appellate review, the standard of review for the grant of a summary judgment is well settled:

"Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. [Citations omitted.] When a summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment." *Patterson v. Brouhard*, 246 Kan. 700, 702, 792 P.2d 983 (1990).

The Dillards claim the Archbishop's failure to comply with building code requirements rendered him directly liable for Lee Dillard's injuries through his own negligence. The court stated it had considered the Dillards' argument that their action was against the Archbishop for his own personal negligence. However, it found the policy arguments in *Ray v. Schneider*, 16 Conn. App. 660, 548 A.2d 461 (1988), *Parker v. Neighborhood Theatres, Inc.*, 76 Md. App. 590, 547 A.2d 1080 (1988), and *Zueck v. Oppenheimer Gateway Properties*, 809 S.W.2d 384 (Mo. 1991), as to "why liability should not extend to the landowner and why there is no duty extending down to the employee of a subcontractor," persuasive.

In *Parker*, an employee of an independent contractor attempted to recover from a landowner and a subcontractor for a construction workplace injury. The independent contractor's employee attempted to hold the landowner liable for violation of a county building code that required the landowner to keep the premises in a safe and reasonable condition during construction. *Parker*, 76 Md. App. at 592-94. The court acknowledged the general rule that a landowner is not liable for injuries caused by the negligence of an independent contractor. Restatement (Second) of Torts

§ 409 (1965). The court then noted exceptions to the rule as stated in Comment b of § 409 that fall into three broad categories:

"1. Negligence of the employer in selecting, instructing or supervising the contractor.
2. Non-delegable duties of the employer arising out of some relation toward the public or the particular plaintiff.
3. Work which is specially, peculiarly, or inherently dangerous." 76 Md. App. at 596.

The appellant in *Parker* was relying on the second category and alleging the landowner's vicarious liability from a duty that is not delegable.

The *Parker* court determined that a landowner had a nondelegable duty under the ordinance but concluded that the duty did not extend to employees of the independent contractor. The court stated the extent of a tort duty depends in part on the party upon whom it is sought to be imposed and upon that party's relationship to the party claiming the benefit of the duty. 76 Md. App. at 595. The court noted that the plaintiff was protected by workers compensation through his employer, the independent contractor, and that the premiums paid by the independent contractor for the accidental injury coverage were a consideration in the contract price between the property owner and the independent contractor. 76 Md. App. at 597.

The *Parker* court noted that, if the plaintiff was allowed to recover for his injuries from the property owner, he would be placed in a better position than the property owner's employees. Furthermore, the court found that allowing the plaintiff to recover would subject the property owner to greater liability because he engaged a qualified independent contractor to do the required work. 76 Md. App. at 597.

We note that the *Parker* court used the term "vicarious liability" to describe the liability of a landowner under a nondelegable duty imposed on the landowner by statute or ordinance. In the present case, the Dillards have alleged that the Archbishop is directly liable based on his nondelegable duty as a landowner. Under the Dillards' theory, the failure of a landowner to comply with an ordinance would imply direct negligence on the part of the landowner. However, our review of the cases indicates that where the employee's injuries are directly caused by the negli-

gence of an independent contractor, the landowner's liability is usually described as "vicarious."

The court in *Ray v. Schneider*, 16 Conn. App. 660, was also concerned with the fact the workers compensation premiums were presumably calculated into the price of the contract negotiated between the employer of the independent contractor and the independent contractor and that the employer of the independent contractor would incur more liability than he would have if he had hired his own employees to do the required work. 16 Conn. App. at 668. The court recognized the general rule that an employer of an independent contractor, absent an act of negligence on his own part, is not liable to others for the negligent acts of the independent contractor. 16 Conn. App. at 663. However, where the employer has a nondelegable duty to take safety precautions imposed by statute or regulation, the employer may be vicariously liable to others for the negligent acts of the independent contractor. 16 Conn. App. at 664. The court stated the exception allows third persons, such as innocent bystanders, to maintain an action against the employer. 16 Conn. App. at 664. However, the court found the employer's vicarious liability does not extend to the employees of the independent contractor. The reasons given by the court in support of its holding are as follows: (1) Employees of independent contractors are covered by workers compensation, (2) the workers compensation premium is included in the contract price, and (3) the imposition of liability would subject the employer of an independent contractor to greater liability than if he had used his own employees to do the required work. 16 Conn. App. at 668.

The *Ray* court also found that the liability of an employer for physical harm to third persons under the negligent hiring doctrine (the first category of exceptions noted in *Parker*) did not apply to injuries sustained by an employee of an independent contractor. The court based its holding on the same reasons it articulated concerning the vicarious liability of an employer of an independent contractor. 16 Conn. App. at 672.

In *Zueck*, 809 S.W.2d 384, an independent contractor's employee brought suit against four defendants who had either ownership or development responsibilities for the St. Louis Union Station. Zueck argued that he was injured as a result of the

inherently dangerous nature of the activity (the third category of exceptions noted in *Parker*) and not his employer's negligence, that the defendants as owners of the land were vicariously liable for his injuries as a result of the inherently dangerous activity, and that the inherently dangerous activity doctrine extends to employees of independent contractors. 809 S.W.2d at 386.

The *Zueck* court recognized the general rule that a landowner has no vicarious liability for the torts of an independent contractor. However, it also recognized that a landowner is liable to others for physical harm caused to them by the negligence of an independent contractor in failing to take special precautions when doing work that is inherently dangerous. 809 S.W.2d at 386. The purpose of this exception "is to prevent the landowner, for whose benefit the work is being done, from avoiding liability and defeating the recovery of an injured, innocent third party, by hiring a contractor who is not fiscally responsible to do the dangerous work." 809 S.W.2d at 386.

The *Zueck* court stated that allowing the employees of independent contractors to invoke the inherently dangerous activity doctrine would increase the risk to third parties and punish property owners who engage the expert assistance of an independent contractor. 809 S.W.2d at 388. The court further stated:

"Workers' compensation laws have not been barriers to suits by injured employees against negligent third parties. This reflects a policy in the law 'to place the loss upon the ultimate wrongdoer.' [Citation omitted.] Where workers' compensation laws provide for liability of negligent third parties, as Missouri's does, there exists no valid reason to hold landowners vicariously liable to employees of independent contractors engaged in inherently dangerous activities." 809 S.W.2d at 390.

Therefore, the *Zueck* court held that the inherently dangerous activity exception no longer applied to employees of independent contractors covered by workers compensation. 809 S.W.2d at 390.

All three of the cases relied on by the trial court concerned the vicarious liability of the property owner and/or employer of the independent contractor. See *Ray*, 16 Conn. App. at 663; *Parker*, 76 Md. App. at 596; *Zueck*, 809 S.W. 2d at 385. Only one case, *Ray*, dealt with the direct liability of an employer of an independent contractor. It held the liability of an employer

for negligently hiring an independent contractor only extended to innocent third persons. 16 Conn. App. at 672.

We find that the trial court did not err in granting summary judgment on the issue of the landowner's direct liabilty for the negligence of the independent contractor.

The Dillards also allege the Archbishop is vicariously liable for Lee Dillard's injuries under the inherently dangerous activity doctrine.

As stated above, the employer of an independent contractor is not liable for the negligence or improper execution of the work by the independent contractor. However, in *Balagna v. Shawnee County*, 233 Kan. 1068, Syl. ¶ 4, 668 P.2d 157 (1983), the court stated:

> "An exception to the general rule is the inherently dangerous activity doctrine, which provides that one who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such dangers."

The Dillards argue that Lee Dillard was performing an inherently dangerous activity when he was injured and that the Archbishop is liable for the independent contractor's negligence. We disagree.

In *Balagna*, the court found that the trenching work performed by this plaintiff was not inherently dangerous. Thus, the court did not determine whether a landowner is vicariously liable to an employee of an independent contractor as opposed to the public in general. The issue in this case was neither raised nor addressed by the *Balagna* court.

As this issue is one of first impression in Kansas, we are persuaded by the *Zueck* decision that the inherently dangerous activity exception should not extend to an employee of an independent contractor covered by workers compensation. Thus, we need not reach the issue of whether construction of a masonry wall is inherently dangerous.

Affirmed.