No. 69,242

LEE DILLARD, SHEILA DILLARD, and LEE DILLARD as next friend of JOSHUA, JUSTIN, LEAH, WILLIAM JEREME, and BRITTANI DILLARD, *Appellants,* v. THE MOST REVEREND IGNATIUS J. STRECKER, Roman Catholic Archbishop, THE CATHOLIC ARCHDIOCESE OF KANSAS CITY IN KANSAS, *Appellee.*

(877 P.2d 371)

Opinion filed July 8, 1994.

*M. Courtney Koger,* of Blackwell Sanders Matheny Weary & Lombardi, of Kansas City, Missouri, argued the cause, and *Robert A. Horn* and *Sally B. Surridge,* of the same firm, were with her on the briefs for appellants.

*Lori R. Schultz,* of Morrison & Hecker, of Overland Park, argued the cause and *Mark E. Johnson* and *R. Christopher Abele,* of the same firm, of Kansas City, Missouri, was with her on the briefs for appellee.

The opinion of the court was delivered by

HOLMES, C.J.: Lee Dillard, Sheila Dillard, and Lee Dillard as next friend of Joshua, Justin, Leah, William Jereme, and Brittani Dillard, minor children, (the Dillards) appeal from the district

court's order dismissing their petition for failure to state a claim upon which relief can be granted. The Kansas Court of Appeals, in 18 Kan. App. 2d 899, 861 P.2d 1372 (1993), affirmed the district court. This court granted the Dillards' petition for review. We now affirm the district court and the Court of Appeals.

The facts and procedure in the trial court were set forth by the Court of Appeals as follows:

"On October 12, 1990, the Most Reverend Ignatius J. Strecker, Roman Catholic Archbishop, the Catholic Archdiocese of Kansas City, Kansas, (Archbishop) contracted with A.L. Huber and Sons, Inc., (Huber) for Huber to act as a general contractor for the construction of a church and school in Leawood, Kansas. Huber subcontracted a portion of its work for the construction project to P & S Masonry, Inc. The subcontract provided that P & S Masonry would perform brick and block masonry work on the construction project as required by the specifications in the project.

"Lee Dillard was employed by independent contractor P & S Masonry. On March 20, 1991, a masonry wall collapsed during construction at the project, crushing Dillard beneath it. As a result of the accident, Lee Dillard suffered serious and permanent injuries. Lee Dillard was covered by workers compensation.

"At the time the accident occurred, the City of Leawood's Uniform Building Code (UBC) was in effect. Relevant to the instant case, UBC § 306(a) requires an owner to employ a special inspector to examine masonry walls under construction. On November 14, 1990, deputy building official Kenneth E. Anderson informed the architects hired by the Archbishop, Father Thomas Tank, and Randy Huber that special inspections were required to be done on the project. It was not until March 28, 1991, that the required inspections were performed.

"The Dillards filed their petition, alleging that the Archbishop had breached his duty to Lee Dillard by failing to provide the required inspection and that Lee Dillard's injuries resulted from the Archbishop's breach of his duty. The Archbishop filed a motion to dismiss for failure to state a claim for negligence because he did not owe a duty to Lee Dillard as an employee of an independent contractor. The court granted the Archbishop's motion, finding that the Dillards failed to state a claim for negligence because the Archbishop did not owe a duty to an employee of an independent contractor. Consequently, the court dismissed the Dillards' petition with prejudice.

"Also, the court granted the Dillards' motion for leave to amend their petition. The Dillards filed an amended petition, alleging the vicarious liability of the Archbishop. The parties stipulated that the Archbishop's motion to dismiss the Dillards' original petition would also apply to the Dillards' amended petition. The court found the amended petition also failed to state a claim upon which relief could be granted and dismissed the amended petition with prejudice." 18 Kan. App. 2d at 900-01.

The record discloses that P & S Masonry and/or Huber were negligent in failing to follow the contract specifications in constructing the wall. The alleged negligent construction of the wall was apparently done by Lee Dillard's employer P & S Masonry. The Dillards assert that if the independent inspections required by the UBC had been timely done, the negligent construction could have been avoided or at least corrected without injury to Lee Dillard.

In the original petition filed in the district court, the Dillards relied solely upon an alleged breach of duty by the Archbishop based upon a failure to comply with certain provisions of the 1985 Uniform Building Code (UBC) adopted by the City of Leawood. The theory relied upon by the Dillards was that the Archbishop owed a direct duty to Lee Dillard based upon Section 306 of the Leawood UBC, which reads in pertinent part:

"(a) **General**. In addition to the inspections required by Section 305, the owner shall employ a special inspector during construction on the following types of work:

. . . .

"6. **Structural Masonry**: During preparation of masonry wall prisms, sampling and placing of all masonry units, placement of reinforcement, inspection of grout space, immediately prior to closing of cleanouts, and during all grouting operations."

Section 305(a) provides in part:

"All construction or work for which a permit is required shall be subject to inspection by the building official, and certain types of construction shall have continuous inspection by special inspectors as specified in Section 306."

The amendment to the petition filed by the Dillards was based upon a theory of vicarious liability and, after incorporating the original petition by reference, reads in its entirety:

"14. Defendant, the Archdiocese, breached its duty to Mr. Dillard by failing to provide the required continuous inspection. Additionally Defendant, The Archdiocese is vicariously liable for the acts and omissions of its agents, servants, employees and professional and business contractors and subcontractors acting for and on Defendant's behalf during the course of an inherently dangerous or special risk activity."

The trial court, in ruling upon the defendant's motion to dismiss, treated it as a motion for summary judgment in accordance

with K.S.A. 1993 Supp. 60-212(b), which provides in pertinent part:

"If, on a motion asserting the defense provided in subsection (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in K.S.A. 60-256 and amendments thereto, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by K.S.A. 60-256 and amendments thereto."

The Court of Appeals, in commenting upon the procedure, stated:

"The distinction between adjudicating a motion to dismiss and a motion for summary judgment is that, in the former, a trial court is limited to a review of the pleadings. When determining a motion for summary judgment, the trial court takes into consideration all of the facts disclosed during the discovery process. *Beck v. Kansas Adult Authority*, 241 Kan. 13, 26, 735 P.2d 222 (1987). In the instant case, both parties filed briefs on the motion to dismiss which contained relevant case law, contracts, correspondence, building code sections, and inspection reports. Consequently, it appears matters outside the pleadings were not excluded by the court. Therefore, it was proper for the court to treat the motion to dismiss as a motion for summary judgment.

"On appellate review, the standard of review for the grant of a summary judgment is well settled:

'Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. [Citations omitted.] When a summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment.' *Patterson v. Brouhard*, 246 Kan. 700, 702, 792 P.2d 983 (1990)." 18 Kan. App. 2d at 901-02.

Under our standard of review we must assume as true (1) the Archbishop had a nondelegable duty under the provisions of the Leawood UBC to provide an independent inspector for the masonry work, and (2) the masonry work being conducted at the time of Lee Dillard's injury was an inherently dangerous activity.

The specific issue before us is whether a landowner is liable for the negligence of an independent contractor which results in a work-related injury to an employee of the independent contractor when the employee is covered by workers compensation. Here, the Dillards present two theories in which they allege the

Archbishop (landowner) is liable for the injuries sustained by Lee Dillard. The first theory contends the Archbishop was directly liable for injuries sustained due to the Archbishop's failure to comply with a city building code. Next, the Dillards contend the Archbishop is vicariously liable under the inherently dangerous activity doctrine and maintain that the construction of masonry walls comes within the scope of the doctrine. Although this court has never addressed the specific questions from the standpoint of the effect of workers compensation coverage, the Dillards argue that this court's holding in *Balagna v. Shawnee County*, 233 Kan. 1068, 668 P.2d 157 (1983), provides support for the vicarious liability theory asserted here. Finally, the Dillards note that while the Workers Compensation Act provides an "exclusive remedy" against an employer, the act does not bar recovery against negligent third parties.

The Archbishop's principal argument is that a landowner owes no duty to an employee of an independent contractor performing work for the landowner. Instead, the Archbishop maintains that the Dillards' recovery should be limited to workers compensation benefits provided by the injured employee's direct employer. The Archbishop argues that the Dillards are attempting to make "an end-run around the workers compensation law," which would result in a form of double recovery for the injured employee. In support of this argument, the Archbishop relies upon several cases from other jurisdictions which set forth various legal and policy arguments buttressing the rule of law upon which he relies.

It has long been the law of Kansas that an employer's liability for injury to an employee is limited exclusively to recovery under the Workers Compensation Act. As such, where the injury and the employer-employee relationship fall within the scope of the Act, the exclusive remedy provision of K.S.A. 44-501(b) precludes an employee from maintaining a civil action against the employer. *Tomlinson v. Owens-Corning Fiberglas Corp.*, 244 Kan. 506, Syl. ¶ 3, 770 P.2d 833 (1989). In *Hollingsworth v. Fehrs Equip. Co.*, 240 Kan. 398, 401, 729 P.2d 1214 (1986), this court discussed the relevant statutory provision, stating:

"This statute is commonly referred to as the exclusive remedy provision of the Workmen's Compensation Act, K.S.A. 44-501 et seq. If a worker can recover

benefits for an injury from an employer under the provisions of the Workmen's Compensation Act, its remedy is exclusive, precluding a common-law negligence action for damages against the employer. *Zehring v. Wickham,* 232 Kan. 704, Syl.¶ 3, 658 P.2d 1004 (1983); *Fugit, Administratrix v. United Beechcraft, Inc.,* 222 Kan. 312, 314, 564 P.2d 521 (1977). This furthers the policy and purpose of the Workmen's Compensation Act, which is to provide an established source of benefits to the employee for injuries arising out of and in the course of his employment, and to shift from the employee to the industry certain burdens incidental to modern industrial operations. *Duncan v. Perry Packing Co.,* 162 Kan. 79, 84, 174 P.2d 78 (1946). Further, the provisions of the Act are to be liberally construed to bring workers under the Act whether or not it is desirable for the specific individual's circumstance. *Zehring v. Wickham,* 232 Kan. 704, Syl. ¶ 5."

However, while the liability of the employer is limited, the employee can still bring an action against and recover damages from a negligent third party. K.S.A. 44-504(a) provides:

"When the injury or death for which compensation is payable under the workers compensation act was caused under circumstances creating a legal liability against some person other than the employer or any person in the same employ to pay damages, the injured worker or the worker's dependents or personal representatives shall have the right to take compensation under the workers compensation act and pursue a remedy by proper action in a court of competent jurisdiction against such other person."

The bulk of the cases in which recovery against a third party has been allowed involve factual situations where the alleged negligence of a third party was not directly related to the work being performed by the injured employee, such as automobile accidents, medical malpractice, product liability, and similar actions. While the issues now before us have been considered in numerous jurisdictions, the liability of a landowner under facts similar to those in this case has not been previously determined by the Kansas appellate courts.

In the instant case, Lee Dillard was covered by workers compensation. The Dillards are now seeking additional recovery, pursuant to K.S.A. 44-504(a), in a third-party civil action against the landowner. The dispositive issue before us is whether a landowner who engages an independent contractor, who is covered by workers compensation, may be liable for work-related injuries to employees of the independent contractor under two exceptions to

the common-law rule that one who engages an independent contractor is not liable for the negligence of the contractor or the employees. As pointed out earlier, the two exceptions asserted here are direct liability of the landowner for violation of a nondelegable duty imposed by a city ordinance and vicarious liability when the work being performed by the independent contractor is of an inherently dangerous nature. While the two theories are distinct, the policy provisions and rationale underlying the cases relied upon by the trial court and the Court of Appeals are applicable to both theories, and both theories are commingled in the authorities cited. Likewise, we will not attempt to isolate authorities applicable to only one theory or the other but will consider the authorities and both theories simultaneously.

The trial court and the Court of Appeals, in reaching their decisions, adopted and relied upon the policy arguments set forth in *Zueck v. Oppenheimer Gateway Properties,* 809 S.W.2d 384 (Mo. 1991); *Parker v. Neighborhood Theatres,* 76 Md. App. 590, 547 A.2d 1080 (1988); and *Ray v. Schneider,* 16 Conn. App. 660, 548 A.2d 461 (1988).

In *Zueck,* 809 S.W.2d 384, an independent contractor's employee brought suit against four landowners for injuries sustained while performing an alleged inherently dangerous activity. The employee, who worked as a journeyman painter, was injured after he slipped from a platform and fell over 20 feet to the floor. The employee argued that his injury resulted from the inherently dangerous nature of his work and not his employer's negligence. In his suit, the employee maintained that the landowners were vicariously liable for his injuries under the inherently dangerous activity doctrine and that the doctrine extended to employees of independent contractors.

The court noted the common-law rule that landowners are not liable for the torts of an independent contractor and also recognized the inherently dangerous activity doctrine. The court stated:

"The general rule under the common law is that a landowner has no vicarious liability for the torts of an independent contractor. This general rule recognizes that the landowner has no right of control over the manner in which the work

is to be done, and for that reason the work 'is to be regarded as the [independent] contractor's own enterprise, and he, rather than the [landowner], is the proper party to be charged with the responsibility for preventing the risk, and administering and distributing it.' W. Prosser & W. Keaton, The Law of Torts, 509 (5th ed. 1984). *Bower v. Peate*, 1 Q.B.D. 321 (1876), announced an exception to this general rule, holding that a landowner is liable for the negligence of his independent contractor if the landowner 'directs an act to be done from which injurious consequences will result unless means are taken to prevent them.' *Id.* at 326.

"Restatement (Second) of Torts, sections 416 and 427 extend liability to landowners who contract for work involving 'special danger' or 'peculiar risk' of which the landowner knows or should know. The landowner is subject to liability 'to others' for physical harm caused to them for the failure of an independent contractor to take special or reasonable precautions against such risks or dangers. The inherently dangerous exception at issue in this case is based upon negligence, usually by the independent contractor. The obvious purpose of the exception is to prevent the landowner, for whose benefit the work is being done, from avoiding liability and defeating the recovery of an injured, innocent third party, by hiring a contractor who is not fiscally responsible to do the dangerous work." 809 S.W.2d at 386.

In refusing to hold the landowners liable for the injuries sustained by the independent contractor's employee, the court overturned a 1928 decision, *Mallory v. Ice & Supply Co.*, 320 Mo. 95, 6 S.W.2d 617 (Mo. 1928), which extended the inherently dangerous activity exception to an employee of an independent contractor. The court stated that the *Mallory* decision involved an employee's injury which occurred prior to the effective date of the state's first workers compensation law, and with the advent of such laws, "most states have restricted the application of the inherently dangerous doctrine to its original concept—protection of innocent third parties not involved in the activity." *Zueck,* 809 S.W.2d at 387.

In its discussion of *Mallory* and in its determination that the inherently dangerous activity doctrine does not apply to the employee of an independent contractor covered by workers compensation, the court stated:

"Independent contractors are frequently, if not usually, hired because the landowner is aware of his own lack of expertise and seeks to have the work performed as safely and efficiently as possible by hiring those possessing the expertise he lacks.

"If the landowner chooses to avoid the additional liability imposed by the inherently dangerous exception, he may choose to direct his own employees to do the work despite his and their lack of expertise. That simple choice limits the landowner's exposure to that provided under worker's compensation. But that choice also increases the risk of injury to the employees and to innocent third parties.

"The anomaly is apparent now. By permitting employees of independent contractors to invoke the inherently dangerous doctrine, the law takes the distorted position of (1) rewarding landowners who, despite their own lack of expertise, choose to perform work negligently resulting in injury to workers, (2) increasing risks to innocent third parties and (3) punishing landowners who seek expert assistance in an effort to avoid liability for injury!" 809 S.W.2d at 387-88.

In a footnote, the court opined:

"This inequity in expertise and awareness of dangers is never greater than where liability for an injured worker falls on a residential landowner. It is not reasonable that a homeowner should face potential financial ruin when he hires an independent contractor to do tuckpointing, . . . digging around foundations, . . . or replacement of electrical lines." 809 S.W.2d at 388 n. 1.

In concluding that the inherently dangerous activity doctrine does not provide a means of recovery to an employee of an independent contractor covered by workers compensation, the court stated:

"Workers' compensation laws have not been barriers to suits by injured employees against negligent third parties. This reflects a policy in the law 'to place the loss upon the ultimate wrongdoer.' Henderson, 48 Fordham L. Rev. at 1186. Where workers' compensation laws provide for liability of negligent third parties, as Missouri's does, there exists no valid reason to hold landowners vicariously liable to employees of independent contractors engaged in inherently dangerous activities.

"The application of the inherently dangerous exception also distorts workers' compensation laws. The exception, if extended to employees of an independent contractor, permits a limited class of injured workers—those who can convince a judge that their work for an independent contractor was inherently dangerous—to avoid the limitations of workers' compensation. This is contrary to the fact that the economic system permits workers who presume to undertake dangerous work to bargain for an enhanced reward for assuming the danger and despite the intended exclusivity of workers' compensation as an injured worker's remedy." 809 S.W.2d at 390.

As additional reasons for its holding, the court recognized that the cost of workers compensation is a cost of doing business that an independent contractor passes on to the landowner as a part

of the contract price and that landowners should not be penalized for engaging independent contractors to perform work which requires skills which may be beyond the landowner's capability.

In the recent case of *Matteuzzi v. Columbus Partnership, L.P.,* 866 S.W.2d 128 (Mo. 1993), the Missouri Supreme Court held that the rule adopted in *Zueck* extended not only to claims of vicarious liability based upon the inherently dangerous activity doctrine but also to claims of direct liability based upon the negligent acts of the landowner. In *Matteuzzi,* the employee was performing renovation work and was injured when a brick wall collapsed, causing him to fall 23 feet from the roof of a rowhouse to the ground. In his petition, the employee made clear that his cause of action was not like that in *Zueck* for vicarious liability but, instead, asserted that the landowner was liable under Restatement (Second) of Torts § 413 (1964). Section 413 imposes upon the landowner a nondelegable duty to take special precautions against known dangers associated with the work entrusted to an independent contractor. In denying the employee's claim, the court adopted the reasoning it set forth in *Zueck,* stating that it was "equally persuasive" under the facts of *Matteuzzi.* In relevant part, the court explained:

"A landowner who engages the services of an independent contractor pays directly or indirectly 'for the compensation coverage when he contracts with the independent contractor.' *Zueck,* 809 S.W.2d at 389. It is unfair, therefore, to subject a landowner to what is, in effect, double liability—workers' compensation coverage *and* liability under the inherently dangerous activity doctrine. *Id.* at 388. Furthermore, the doctrine encourages landowners to limit their liability by using their own nonexpert employees to perform inherently dangerous work rather than hire independent contractors with expertise in the field. Thus, the doctrine counterproductively increases the risk of injury to others. *Id.* Consistent with *Zueck,* we hold that Matteuzzi, as the employee of the landowner's independent contractor, has no cause of action under either variation of the inherently dangerous activity doctrine." 866 S.W.2d at 131-32.

The same result was reached in another recent Missouri Supreme Court case. *Owens v. Shop 'N Save Warehouse Foods,* 866 S.W.2d 132 (Mo. 1993).

The second case relied upon by the trial court and the Court of Appeals was *Parker v. Neighborhood Theatres,* 76 Md. App.

590, 547 A.2d 1080 (1988). In *Parker,* an employee of an independent contractor sued both the landowner and a subcontractor for injuries sustained in a construction accident. The employee received workers compensation benefits and filed this action against the respective parties. In his petition, the employee alleged that the landowner was vicariously liable under Restatement (Second) of Torts § 424 (1964). Section 424, entitled "Precautions Required by Statute or Regulation", provides an exception to the general rule that a landowner is not liable for the negligence of the independent contractor or his employees. Here, the employee alleged that the landowner was liable for violating a county building code which required the landowner to "keep the premises in a safe and reasonable condition during construction and to provide all safeguards imposed" by the county building code. 76 Md. App. at 594.

While the court conceded that the relevant building code imposed a nondelegable duty upon the landowner as asserted by the employee, the court concluded that the duty did not extend to the employees of the independent contractor. In relevant part, the court reasoned:

"The appellant was protected by Worker's Compensation through his employer, Keller Brothers. The premiums paid for the accidental injury coverage were a consideration in the contract price between Keller Brothers and NTI.

". . . [W]e see no valid reason why the appellant herein should be placed in a better position than if he were employed by NTI, in which case he would be limited to compensation benefits only. Conversely, NTI should not be subjected to greater liability because it engaged a qualified independent contractor to build the additions to its theaters.

"We hold, therefore, that vicarious liability of the owner may not be predicated upon a statutory non-delegable duty where the injuries to an employee of a contractor arise solely from the negligence of the contractor in failing to maintain a reasonably safe work place." 76 Md. App. at 597.

In reaching its decision, the court stated:

"The nature and extent of a tort duty recognized by law depends in part on the status of the party upon whom it is sought to be imposed and upon his relationship to the party claiming the benefit of it. . . .

"The general rule is that the employer of an independent contractor is not liable for the negligence of the contractor or his employees. Restatement (Sec-

ond) of Torts, section 409 [1964]. Exceptions to the rule, as noted in Comment b of Section 409, fall into three broad categories:

1. Negligence of the employer in selecting, instructing or supervising the contractor.
2. Non-delegable duties of the employer arising out of some relation toward the public or the particular plaintiff.
3. Work which is specially, peculiarly, or inherently dangerous.

For the purposes of this discussion, appellant is relying on the second category of exceptions to the general rule and alleges vicarious liability from a duty that is not delegable.

"The imposition of vicarious liability by the creation of the exceptions to the general rule is primarily a policy decision, the purpose being the protection of the public generally. While some jurisdictions hold that the contractor's employees are within the class to whom the owner owes a duty, the majority of jurisdictions hold that an owner's vicarious liability does not extend to employees of independent contractors.

. . . .

"We hold, therefore, that vicarious liability of the owner may not be predicated upon a statutory non-delegable duty where the injuries to an employee of a contractor arise solely from the negligence of the contractor in failing to maintain a reasonably safe work place. We concede that the Prince George's County Code is applicable to an owner and that the duties imposed thereunder may not be delegated to a contractor. As to the public generally, the duty remains but it does not extend to employees of the contractor who already have a remedy paid for by the owner." 76 Md. App. at 595-98.

After discussion of various arguments propounded by the plaintiffs, the court concluded:

"Additionally, appellant has not provided the Court with any authority that an employee of an independent contractor injured by the negligence of his own master is a person intended to be included among the class of persons to whom the owner owes a non-delegable duty of reasonable care. . . . No matter how appellant phrases it, what he is unsuccessfully attempting is an end run on the Worker's Compensation Law." 76 Md. App. at 601-02.

We pause here to note, as did the Court of Appeals, that throughout the various decisions some confusion exists in referring to the alleged liability of the landowner as "direct" or "vicarious." The terms obviously overlap in some cases and appear to be used interchangeably in others, but the policy provisions underlying the decisions are applied uniformly to both.

In the third case relied upon by the courts below, *Ray v. Schneider*, 16 Conn. App. 660, 548 A.2d 461 (1988), the question

again involved whether a landowner could be liable to an injured employee of an independent contractor for that contractor's negligence. As in the case at bar, the injured employee in *Ray* brought suit against the landowners under both a vicarious and direct liability theory. Under the vicarious liability theory, the employee argued alternative claims, maintaining that the landowners failed to take appropriate safety precautions required because (1) the work was inherently dangerous, and (2) a nondelegable duty was owed to the employees to ensure a safe work place. Under the direct liability theory, the employee alleged that the landowners were negligent in failing to exercise reasonable care in their selection of the independent contractor.

In discussing the issues, the court recognized the general rule that a landowner is not liable for the negligent acts of an independent contractor. However, the court also noted that various exceptions to the general rule exist, including instances when the work being performed by the contractor is inherently dangerous and when the landowner has a nondelegable duty to take certain safety precautions to provide for a safe work place. While the court stated that these exceptions allow innocent third persons, unassociated with the work, to maintain a negligence action against the landowner, the court reviewed the question of "whether an employee of an independent contractor has a status significantly distinguishable from a member of the general public with respect to the employer's [landowner's] duty to compensate for injury caused by the negligence of the independent contractor." 16 Conn. App. at 666-67. In answering the question in the affirmative, the court concluded:

"Employees of an independent contractor stand on a different footing with respect to such injury than does the general public. An employee of an independent contractor who performs inherently dangerous work has specifically contracted to perform such work knowing the risks involved and receives generally higher compensation because of such risks. *Poirier v. Plymouth*, 374 Mass. 206, 227, 372 N.E.2d 212 (1978). Furthermore, employees injured on the job, in contrast to passersby or other members of the general public who 'are relegated to the hazards of litigation'; *Vertentes v. Barletta Co.*, [392 Mass. at 171] (Abrams, J., concurring); receive recovery as a matter of due course under a statutory/administrative scheme. Hence, the concern underlying the vicarious

liability doctrine, namely, that an individual who is injured by the negligence of an independent contractor performing inherently dangerous work might not receive just compensation for his injury, is not applicable when the injured person is the employee of the independent contractor. These differences support the distinction made by the courts between members of the general public and employees of the independent contractor in the context of vicarious liability of the contractor's employer." 16 Conn. App. at 667-68.

In concluding that an employee of an independent contractor covered by workers compensation could not recover from the landowner for either breach of a nondelegable duty or inherently dangerous activity the court stated:

"Aside from this distinction [as set out above], there are other compelling reasons for our decision to deny liability. With relatively few exceptions, an employee's recovery for work-related injuries is governed by our comprehensive statutory workers' compensation scheme. The insurance from which compensation for an injury is to be paid is carried by the contractor. It is to be expected that the cost of workers' compensation insurance will be included by the contractor in his contract price for undertaking to perform the inherently dangerous work and, therefore, will ultimately be financed by the employer who hires the independent contractor. *King v. Shelby Rural Electric Co-Op Corporation,* [502 S.W.2d] at 662. The employer [landowner] thus already furnishes funds, at least in part, to pay the insurance premiums of the independent contractor for workers' compensation. To hold the employer of the contractor liable vicariously to the employee of the contractor would effectively make the employer [landowner] pay twice for a contractor's employee's work-related injury.

"Finally, and most importantly, the imposition of liability would subject the employer of an independent contractor to greater liability than he would have had if he had used his own employees on the job. *Vagle v. Pickands Mather & Co.,* [611 F.2d] at 1219; *King v. Shelby Rural Electric Co-Op Corporation,* [502 S.W.2d] at 662-63. As a general rule, an employee's recovery is limited to workers' compensation. In this case, for example, if the plaintiff had been an employee of Schneider and Welsh, doing exactly the same work, he would have been prevented by our workers' compensation law from suing them in tort. Employees of an employer should not be limited to workers' compensation benefits while permitting employees of an independent contractor to recover not only workers' compensation benefits, but also to recover damages in tort from an employer of an independent contractor. If such were the case, there would be an indefensible status distinction between employees of an independent contractor and employees working directly for the owner of the premises, the real estate developers, the lessees of the premises or the general contractor. 'To the extent that work[er]'s compensation is the preferred remedy for occupational injuries, it does appear anomalous and fortuitous to allow an employee to recover

in tort from a third party owner when the accident arises out of and in the course of employment. In other words, a third party owner should not be exposed to greater liability by employing an independent contractor.' *Peone v. Regulus Stud Mills, Inc.,* [113 Idaho at] 378.

"There are other reasons to support our conclusion denying liability. First, a fundamental principle of our tort law is that ordinarily an individual should be held liable for compensating harm only when he has caused that harm through his own fault. The principle of liability for individualized fault is the norm, whereas vicarious liability 'is regarded as an exceptional solution.' *Nowak v. Nowak,* 175 Conn. 112, 126, 394 A.2d 716 (1978).

"Second, recovery in tort on a suit based on vicarious liability for injuries for which an employee has already been compensated pursuant to his workers' compensation benefits usually would contravene the legislative scheme of the Workers' Compensation Act.

"Third, the employee of the contractor 'has greater knowledge of and control over the dangers to which he is exposed' than does the employer of the contractor. *Ackerman v. Gulf Oil Corporation,* [555 F. Supp.] at 96. 'Generally, the employee works with those dangers daily, and from such experience usually has a clearer idea of the dangers to which he is exposed and how he might alleviate such dangers.' Id.

"Fourth, public policy encourages real estate developers and other employers to hire independent contractors where work is inherently dangerous because of their expertise, skill and ability to understand the dangers and to best take safety precautions against them. Imposition of vicarious liability upon the employer [landowner], which would expose him to more liability than if he undertook the work himself, can only discourage an employer [landowner] from seeking qualified contractors to perform dangerous work.

"We conclude that an employer of an independent contractor may not be vicariously liable to the contractor's employees for an injury caused in the performance of inherently dangerous work on account of the contractor's failure to take the necessary safety precautions, or because the employer had a nondelegable duty to provide a safe work place." 16 Conn. App. at 668-70.

Two additional cases relied upon by the Archbishop are *Tauscher v. Puget Sound Power & Light Co.,* 96 Wash. 2d 274, 635 P.2d 426 (1981), and *Stockwell v. Parker Drilling Co., Inc.,* 733 P.2d 1029 (Wyo. 1987). In *Tauscher,* the plaintiff, decedent's mother, brought a wrongful death action against Puget Sound Power alleging that it violated both statutory and common-law duties it owed to the decedent, an employee of an independent contractor hired by the utility. Specifically, the plaintiff argued that the utility owed the decedent a nondelegable duty to ensure compliance with safety requirements based on statutes and the

inherently dangerous nature of decedent's work. *Tauscher*, 96 Wash. 2d at 276. After reviewing the case law of various states, the Supreme Court of Washington announced its rationale for limiting the property owner's liability to third persons other than the independent contractor's employees. In pertinent part, the court stated:

"There are strong policy considerations behind limiting an owner's liability to those third parties other than employees of independent contractors. First, the rationale underlying the exception to the rule for nonliability, which is that we did not want an owner shifting his or her liability by hiring an independent contractor to perform a task, is not relevant in the case of an employee of an independent contractor. An owner who employs an independent contractor is already liable to *all* third persons, including employees of the independent contractor, for his or her own negligence, for negligence in the hiring of the independent contractor and for injuries resulting from any latent defects on the land. See *Welker v. Kennecott Copper Co.*, 1 Ariz. App. 395, 403 P.2d 330 (1965); Restatement (Second) of Torts § 343 [1964]. Thus, the law already imposes upon the employer a duty of due care. The employer's liability for damage resulting from the negligence of the independent contractor is limited to third parties largely because the employer has in a sense already assumed financial responsibility for the injuries to the employees in that the contract he or she pays to the independent contractor necessarily includes the costs of the insurance premiums that the independent contractor must pay for workers' compensation coverage. *King v. Shelby Rural Electric Cooperative Corp.*, 502 S.W.2d 659 (Ky. App. 1973); *Vagle v. Pickands Mather & Co.*, 611 F.2d 1212, 1218 (8th Cir. 1979). The employee already has a remedy; one which the owner has paid for.

"Secondly, under our workers' compensation statutory scheme, the employer is released from financial responsibility for on-the-job injuries to his or her employees. To hold an employer liable for injuries to employees of the independent contractor would subject the employer to a greater liability than if the employer had utilized his or her own employees. *King*, at 663; *Vagle*, at 1218; *Cochran v. International Harvester Co.*, 408 F. Supp. 598, 602-603 (W.D. Ky. 1975).

"Finally, to hold otherwise would serve to encourage owners to use their own employees (who may be inexperienced) and thereby escape liability for any negligent acts and conversely, discourage owners from hiring experienced independent contractors, who specialize in hazardous work." *Tauscher*, 96 Wash. 2d at 281-82.

Lastly, in *Stockwell*, 733 P.2d 1029, the Supreme Court of Wyoming reviewed the question of whether § 413 of Restatement (Second) of Torts (1964), entitled "Duty to Provide for Taking of Precautions Against Dangers Involved in Work Entrusted to

Contractor," applied to employees of an independent contractor. The employee was injured when a roof panel he was trimming buckled and threw him to the ground. In ruling that the employee of an independent contractor was not the "other" to whom the employer of the independent contractor owed a duty of care under the language of § 413, the court reiterated its holding in *Jones v. Chevron U.S.A., Inc.,* 718 P.2d 890 (Wyo. 1986), where the court had previously addressed the question as it pertained to § 416 ("Work Dangerous in Absence of Special Precautions") of the Restatement (Second) of Torts (1964). The court held that the same logic and reasoning which applied to § 416 applied alike to § 413.

In quoting from *Jones,* 718 P.2d at 899, the *Stockwell* court stated in relevant part:

" '[M]ost jurisdictions that have decided the issue have refused to apply the exception when an employee of the contractor is the injured party. *Tauscher v. Puget Sound Power & Light Company,* [Wash.,] 635 P.2d 426, 429 and n. 2 [1981]. There are several good reasons for this view. First, if a bystander is injured by the negligence of a financially irresponsible contractor, the owner may be the bystander's only source of recompense. The bystander is a totally innocent third party having no involvement in the work; and, if it is inherently dangerous and likely to cause harm, the owner undertaking the work should be responsible for the harm. The employee, on the other hand, is covered by worker's compensation even if the contractor is insolvent. The owner should not have to pay for injuries caused by the contractor when the worker's compensation system already covers those injuries. *Sloan v. Atlantic Richfield Company,* Alaska, 552 P.2d 157, 160-161 (1976). The owner "has in a sense already assumed financial responsibility for the injuries" because the independent contractor passes along his worker's compensation costs to the owner. *Tauscher v. Puget Sound Power & Light Company,* supra, at 430; *Eutsler v. United States,* 376 F.2d 634, 636 (10th Cir. 1967).

" 'Second, under worker's compensation, an employer is released from tort liability for his employee's job-related injuries. If we held an owner vicariously liable for injuries to the contractor's employees, then the owner would be subject to greater liability than if he employed his own workers to do the job. Owners might be encouraged to use their own inexperienced employees instead of experienced independent contractors who specialize in hazardous work. *Tauscher v. Puget Sound Power & Light Company,* supra, at 430-431.

" 'Finally, if the owner maintains control over the work and exercises that control negligently, he can be directly liable to the employee for his own negligence. Rather than imposing vicarious liability in these cases, it is better to

hold the contractor and the owner directly responsible for their own fault. The contractor will pay via worker's compensation and the owner through the tort system. *Conover v. Northern States Power Company,* [Minn.,] 313 N.W.2d [397] at 405 [1981].' " 733 P.2d at 1031-32.

While the Dillards provide some case law in support of their claims, most courts which have examined this issue have adopted the rule recognized in our Court of Appeals' opinion. See *Scofi v. McKeon Const. Co.,* 666 F.2d 170 (5th Cir. 1982); *Evans v. Transportacion Maritime Mexicana,* 639 F.2d 848 (2d Cir. 1981); *Nelson v. United States,* 639 F.2d 469 (9th Cir. 1980); *Chavis v. Finnlines Ltd., OY,* 576 F.2d 1072 (4th Cir. 1978); *Hess v. Upper Mississippi Towing Corp.,* 559 F.2d 1030 (5th Cir. 1977), *cert. denied* 435 U.S. 924 (1978); *Craig v. Olin Mathieson Chemical Corporation,* 427 F.2d 962 (7th Cir.), *cert. denied* 400 U.S. 964 (1970); *Parsons v. Amerada Hess Corporation,* 422 F.2d 610 (10th Cir. 1970); *Lipka v. United States,* 369 F.2d 288 (2d Cir. 1966), *cert. denied* 387 U.S. 935 (1967); *Galbraith v. United States,* 296 F.2d 631 (2d Cir. 1961); *Wallach v. United States,* 291 F.2d 69 (2d Cir.), *cert. denied* 368 U.S. 935 (1961); *Corban v. Skelly Oil Company,* 256 F.2d 775 (5th Cir. 1958); *Hurst v. Gulf Oil Corporation,* 251 F.2d 836 (5th Cir. 1958); *Ackerman v. Gulf Oil Corp.,* 555 F. Supp. 93 (D.N.D. 1982); *Olson v. Kilstofte and Vosejpka, Inc.,* 327 F. Supp. 583 (D. Minn. 1971); *Morris v. City of Soldotna,* 553 P.2d 474 (Alaska 1976); *Sloan v. Atlantic Richfield Company,* 552 P.2d 157 (Alaska 1976); *Matanuska Electric Association, Inc. v. Johnson,* 386 P.2d 698 (Alaska 1963); *Mason v. Arizona Public Serv. Co.,* 127 Ariz. 546, 622 P.2d 493 (Ct. App. 1980); *Welker v. Kennecott Copper Company,* 1 Ariz. App. 395, 403 P.2d 330 (1965); *Jackson v. Petit Jean Electric Co-op,* 270 Ark. 506, 606 S.W.2d 66 (1980); *Florida Power and Light Co. v. Price,* 170 So. 2d 293 (Fla. 1964); *Pearson v. Harris,* 449 So. 2d 339 (Fla. Dist. App. 1984); *Peone v. Regulus Stud Mills, Inc.,* 113 Idaho 374, 744 P.2d 102 (1987); *Johns v. New York Blower Co.,* 442 N.E.2d 382 (Ind. App. 1982); *King v. Shelby Rural Electric Cooperative Corp.,* 502 S.W.2d 659 (Ky. 1973), *cert. denied* 417 U.S. 932 (1974); *Vertentes v. Barletta Co.,* 392 Mass. 165, 466 N.E.2d 500 (1984); *Conover v. Northern States Power Co.,*

313 N.W.2d 397 (Minn. 1981); *Sierra Pac. Power Co. v. Rinehart,* 99 Nev. 557, 665 P.2d 270 (1983); *Donch v. Delta Inspection Services, Inc.,* 165 N.J. Super. 567, 398 A.2d 925 (1979); *Hader v. Coplay Cement Mfg. Co.,* 410 Pa. 139, 189 A.2d 271 (1963); *Cooper v. Metropolitan Government, Etc.,* 628 S.W.2d 30 (Tenn. App. 1981); *Humphreys v. Texas Power & Light Company,* 427 S.W. 2d 324 (Tex. Civ. App. 1968); *Humble Oil & Refining Co. v. Bell,* 180 S.W.2d 970 (Tex. Civ. App. 1943); *Epperly v. Seattle,* 65 Wash. 2d 777, 399 P.2d 591 (1965); *Potter v. Kenosha,* 268 Wis. 361, 68 N.W.2d 4 (1955).

Although the cases cited by the Dillards represent the minority view, those opinions, along with most of the case law we have located which supports the Dillards' theories, are simply inapposite to the specific issue under discussion. See *Lindler v. District of Columbia,* 502 F.2d 495 (D.C. Cir. 1974); *Van Arsdale v. Hollinger,* 68 Cal. 2d 245, 66 Cal. Rptr. 20, 437 P.2d 508 (1968); *Makaneole v. Gampon,* 70 Hawaii 501, 777 P.2d 1183 (1989); *Giarratano v. The Weitz Co., Inc.,* 259 Iowa 1292, 147 N.W.2d 824 (1967); *Perry v. McLouth Steel Corp.,* 154 Mich. App. 284, 397 N.W.2d 284 (1986); *Vannoy v. City of Warren,* 15 Mich. App. 158, 166 N.W.2d 486 (1968); *Elliott v. Public Serv. Co. of N.H.,* 128 N.H. 676, 517 A.2d 1185 (1986). These opinions, while providing support for the Dillards' proposed rule of law, fail to address the various policy considerations recognized by the vast majority of jurisdictions and set forth herein.

The Dillards, however, rely primarily on our opinion in *Balagna v. Shawnee County,* 233 Kan. 1068, 668 P.2d 157 (1983). In *Balagna,* the widow and children of Dennis Balagna brought an action to recover for the wrongful death of Dennis, who was killed when a trench caved in on him during a construction project. Dennis was an employee of the general contractor for the construction of a sewage disposal facility. The defendants were Shawnee County and Sewer District No. 33 as landowners, the architect-engineers hired by the landowners, and the general contractor. It was alleged that the trench in which Dennis was working at the time of his death was not properly shored and protected from collapse.

In *Balagna*, the main issue was whether Shawnee County, as landowner, was liable for the negligence of the independent contractor which resulted in the wrongful death of one of its employees. The decedent's widow maintained that the landowner was liable under the inherently dangerous activity exception (Restatement [Second] of Torts § 427 [1964]). However, while the court noted that the state recognized both the general principal of nonliability stated in Restatement (Second) of Torts § 409 (1964) and the inherently dangerous activity exception, the court found no liability on the part of the landowner because the activity engaged in by the employee was not inherently dangerous.

In discussing the liability of a landowner, the court stated the general rule and the inherently dangerous activity doctrine as follows:

"The well-established general rule in this state is that when a person lets out work to another, the contractee reserving no control over the work or workmen, the relation of contractor and contractee exists, and not that of master and servant, and the contractee is not liable for the negligence or improper execution of the work by the contractor. *Laffery v. Gypsum Co.*, 83 Kan. 349, 111 Pac. 498 (1910); *Reilly v. Highman*, 185 Kan. 537, 345 P.2d 652 (1959); *Phillips Pipe Line Co. v. Kansas Cold Storage, Inc.*, 192 Kan. 480, 487, 389 P.2d 766 (1964). The Kansas cases recognize that there are many exceptions and limitations to the foregoing rule, one of which is that an owner or contractee is responsible for injuries to a third party caused by work done by an independent contractor, where the contract directly requires the performance of work intrinsically dangerous, however skillfully done.

"The plaintiffs rely primarily on this exception which is known as the 'inherently dangerous activity' doctrine. The doctrine is set forth in the Restatement (Second) of Torts § 427 [1964], in the following language:

"§ 427. Negligence as to Danger Inherent in the Work

'One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.' " 233 Kan. at 1079-80.

In affirming summary judgment granted in favor of the landowners, this court found that the work involved was not inherently dangerous and that the exception did not apply to the facts of

the case. The Court of Appeals found that *Balagna* did not apply to the present case and disposed of it in cursory fashion, stating:

"The Dillards argue that Lee Dillard was performing an inherently dangerous activity when he was injured and that the Archbishop is liable for the independent contractor's negligence. We disagree.

"In *Balagna*, the court found that the trenching work performed by this plaintiff was not inherently dangerous. Thus, the court did not determine whether a landowner is vicariously liable to an employee of an independent contractor as opposed to the public in general. The issue in this case was neither raised nor addressed by the *Balagna* court." 18 Kan. App. 2d at 906.

While we agree with the Court of Appeals' decision affirming the trial court, we believe its analysis of *Balagna* might be misleading. As pointed out in *Balagna*, numerous Kansas cases have recognized the inherently dangerous activity exception to the general rule of nonliability.

In the recent case of *Falls v. Scott*, 249 Kan. 54, 815 P.2d 1104 (1991), the plaintiff Falls was severely injured when a brush hog mowing machine being operated on an adjacent property threw a piece of wire that struck him in the face and eyes. Falls sued the landowner and the mowing machine operator. Falls contended that if the mowing machine operator was an independent contractor, the landowner was still liable on the theory that operation of the brush hog constituted an inherently dangerous activity. The trial court granted summary judgment to the landowner on the theory that the mowing activity was not inherently dangerous. We reversed the trial court's summary judgment and remanded the case for trial. In doing so, this court stated:

"As a general rule, when a person (a contractee) lets out work to another and reserves no control over the work or workmen, the relation of contractee and independent contractor exists, and not that of master and servant, and the contractee is not liable for the negligence or improper execution of the work by the independent contractor. *Balagna v. Shawnee County*, 233 Kan. 1068, Syl. ¶ 3, 668 P.2d 157 (1983). An exception to the general rule is the inherently dangerous activity doctrine, which provides that one who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such dangers. *Balagna*, 233 Kan. 1068, Syl. ¶ 4.

"Restatement (Second) of Torts § 427 defines the 'inherently dangerous activity' doctrine in the following language:

'One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.'" 249 Kan. at 59.

The court went on to state:

"As to the question of what type of work is or is not considered to be inherently or intrinsically dangerous, courts have found no rule of universal application by which they may abstractly draw a line of classification in every case. Generally speaking, the proper test to determine if an activity is inherently dangerous is whether danger inheres in the performance of the work, and important factors to be understood and considered are the contemplated conditions under which the work is to be done and the known circumstances attending it. It is not enough that it may possibly produce injury. Stated another way, intrinsic danger in an undertaking is one which inheres in the performance of the contract and results directly from the work to be done—not from the collateral negligence of the contractor. *Reilly v. Highman,* 185 Kan. 537, 541, 345 P.2d 652 (1959); 41 Am. Jur. 2d, Independent Contractors § 41, p. 807; 57 C.J.S., Master and Servant § 590, b.(1); Annot., 23 A.L.R. 1084, 1095. The same test is recognized in *Phillips Pipe Line Co. v. Kansas Cold Storage, Inc.,* 192 Kan. 480, 488, 389 P.2d 766 (1964)." 249 Kan. at 61.

Kansas has clearly recognized the inherently dangerous activity doctrine. However, the fact that the doctrine has been recognized and applied in Kansas is not determinative of the case now before us. None of the Kansas cases we have found addressed the issue of the effect of workers compensation on the applicability of the inherently dangerous activity doctrine under facts similar to the present case. The various policy reasons precluding liability of a landowner for injuries suffered by an employee of an independent contractor covered by workers compensation were not raised or considered in our earlier cases. We find the various policy provisions discussed in the various cases cited herein not only persuasive but also determinative of this case. The policy reasons include:

(1) The landowner should not have greater liability to an employee of an independent contractor than the liability of the contractor to that employee.

(2) The landowner should not have greater liability to the employees of an independent contractor than the landowner has to the landowner's own employees.

(3) Liability on the part of the landowner would encourage the landowner to use the landowner's less experienced employees rather than an experienced contractor.

(4) Employees of an independent contractor, and their dependents, are protected under the provisions of the workers compensation statutes.

(5) Workers in inherently dangerous jobs are fully aware of the dangers involved and receive compensation accordingly.

(6) Landowners may not have expert knowledge of inherently dangerous work, the risks involved, and methods of avoiding such risks that an independent contractor engaged in such activity possesses.

(7) Liability on the part of the landowner would create a class of employees, those of an independent contractor, with greater rights than the employees of the landowner for doing the same work.

(8) To allow an employee of an independent contractor covered by workers compensation to invoke the inherently dangerous activity doctrine would (a) reward landowners who, despite their own lack of expertise, choose to perform work negligently resulting in injury to workers, (b) increase the risks to innocent third parties, and (c) punish landowners who seek expert assistance in an effort to avoid liability for injury.

(9) A landowner who engages the services of an independent contractor pays directly or indirectly for the compensation coverage when the landowner contracts with the independent contractor.

We therefore hold:

(1) A landowner is not liable to an employee of an independent contractor covered by workers compensation for injury sustained as a result of the breach of a nondelegable duty imposed upon the landowner by statute or ordinance.

(2) The inherently dangerous activity exception to the nonliability of a landowner does not extend to employees of an independent contractor covered by workers compensation.

(3) Our decision is limited to the facts herein and to those instances where the injured employee of an independent contractor covered by workers compensation seeks to hold a landowner liable under the theories discussed in the opinion.

We conclude that summary judgment was proper and the Archbishop has (1) no direct liability to the Dillards for the alleged violation of a nondelegable duty to provide an independent inspection under the Leawood UBC and (2) no indirect or vicarious liability to the Dillards under the inherently dangerous activity doctrine. Any other result would violate the public policy inherent in our workers compensation laws.

The judgments of the district court and of the Court of Appeals are affirmed.