Randy **GRIFFIN**, Plaintiff,

v.

**SECURITY PACIFIC AUTOMOTIVE FINANCIAL SERVICES COR-PORATION, Defendant.**

**No. Civ.A. 96–2275–GTV.**

United States District Court,
D. Kansas.

Feb. 17, 1998.

Tamatane Aga, Jr., Olathe, KS, for plaintiff.

Elizabeth Drill Nay, Lewis, Rice & Fingersh, L.C., Kansas City, MO, Michael P. Howe, Lewis Rice & Fingersh, LC, Kansas City, MO, Louis A. Cohn, Porter & Cohn, L.L.C., Kansas City, MO, for defendant Bank of America.

Rex A. Sharp, Husch & Eppenberger, Kansas City, MO, Elizabeth Drill Nay, Michael P. Howe,Leis, Rice & Fingersh, L.C., Kansas City, MO, Louis A. Cohn, Porter & Cohn, L.L.C., for Automotive Security Pacific Automotive Financial Services Corp.

Rex A. Sharp, Husch & Eppenberger, Kansas City, MO, Elizabeth Drill Nay, Lewis, Rice & Fingersh, L.C., Kansas City, MO, Michael P. Howe, Lewis Rice & Fingersh, LC, Kansas City, MO, Louis A. Cohn, Porter & Cohn, L.L.C., Kansas City, MO, for Automotive Security Pacific Automotive Financial Services Corp., counter-claimant.

**MEMORANDUM AND ORDER**

VAN BEBBER, District Judge.

This diversity case arises out of the sale and repossession of a 1985 BMW 318i that plaintiff Randy Griffin leased and attempted to purchase. Plaintiff alleges that defendant

failed to send him a timely assignment of title, breached the installment contract, and attempted to collect a nonexistent debt, all in violation of the Kansas Consumer Protection Act, K.S.A. 50–623 *et seq.* The case is before the court on defendant's motion for summary judgment (Doc. 63). For the reasons set forth, defendant's motion is denied.

### I. Factual Background

The following facts are either uncontroverted or based on evidence viewed in a light most favorable to the nonmoving party. Facts that are either immaterial or not properly supported by the record are omitted.

On May 9, 1985, plaintiff entered into a 48–month closed-end vehicle lease agreement with Dale Sharp, Inc. ("Sharp") of Topeka, Kansas for the BMW. Sharp assigned its interest in the lease to defendant Security Pacific Automotive Financial Services Corporation. At the inception of the lease, Sharp assigned the Certificate of Origin for the BMW to ."Security Pacific Credit Corp. c/o Randy Griffin" at plaintiff's then-home address. On June 7, 1985, plaintiff signed a Title and Registration Application with the Kansas Department of Revenue reflecting defendant's status as legal title holder and plaintiff's status as lessee.

In February 1989, before the lease expired, defendant informed plaintiff that he had the option to re-lease the car, buy the car with cash, or finance the purchase of the car through defendant at fourteen and one-half percent interest. Plaintiff chose the option of an installment purchase contract. When plaintiff's lease expired in May 1989, his loan application for the purchase of the car had yet to be processed.

Plaintiff contacted defendant's loan department to determine an appropriate financial arrangement until his loan was approved. Plaintiff claims that someone in defendant's loan department told him to continue making his normal monthly payments and that the payments would be credited toward the purchase of the car when his loan was approved. Plaintiff also claims that he was told to identify his checks with his former lease account number to make it easier to keep track of his accruing credits. Plaintiff did as he was told and made payments in May, June, July, and August of 1989. In September 1989, plaintiff

received a letter from defendant indicating that he had failed to make certain lease payments due under a second lease. Apparently, defendant had entered plaintiff into a new lease (called a hold over lease by defendant) when the BMW was not returned, and while approval of plaintiff's loan application was still pending. In response, plaintiff again contacted defendant and was assured that his payments would be credited against the amount of his pending loan. Plaintiff then made a double payment in September 1989 and a final payment in November 1989.

On November 26, 1989, plaintiff entered into a thirty-six-month installment contract with defendant to purchase the BMW. The contract specified that it "SUPERSEDES ALL PREVIOUS CONTRACTS" and that "[a]ny changes to this contract must be in writing and signed by [Buyer] and Seller." (Doc. 37, Ex. 1.) During the term of the installment contract, the title certificate continued to show as owner of the vehicle, "Security Pacific Credit Corp. c/o Randy Griffin." Defendant did not formally assign title of the BMW to plaintiff after the purchase contract was signed. Plaintiff made thirty-one payments under the contract, but intentionally failed to make the final five. He took the position that the five payments made in the interim period between the end of the first lease and the signing of the installment purchase contract should have been credited toward the vehicle purchase price under the installment contract.

In January 1993, defendant turned plaintiff's account over to Coast Professional Services ("Coast") for collection. On January 20, 1993, Coast sent a form collection letter indicating it had been assigned plaintiff's account by defendant. Coast made various written and telephone contacts with plaintiff, but failed to collect any money. In October 1993, defendant hired Global Collection Services ("Global") to collect plaintiff's outstanding debt. Plaintiff received various calls and letters from Global, but refused to make any more payments. Plaintiff continued to drive the BMW.

On June 27, 1994, defendant sent plaintiff a "notice of default and right to cure" letter. On July 28, 1994, the BMW was repossessed.

The BMW was sold and the sale price was credited to plaintiff's alleged outstanding balance. Although the plaintiff's outstanding balance was no longer on defendant's books, collection efforts persisted. On July 21, 1995, defendant acknowledged that the debt was paid and that it had failed to notify the collection agency.

On May 22, 1996, plaintiff filed suit in the Johnson County, Kansas District Court, and defendant removed the case to federal court. Plaintiff seeks $81,311.92 in damages.

## II. Summary Judgment Standards

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir. 1984). A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). One of the principal purposes of summary judgment is to isolate and dispose of factually unsupportable claims or defenses, and Rule 56 should be interpreted in a way that accomplishes this purpose. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court's proper inquiry is whether there is a need for a trial; in other words, whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex,* 477 U.S. at 325. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *See id.*

## III. Discussion

### A. Choice-of-Law

For the reasons set forth in the court's July 30, 1997 memorandum and order, Kansas contract law governs this case.

### B. Validity of the Installment Contract

In Kansas, all sales of motor vehicles are rendered fraudulent and void if the seller fails to assign certificate of title to the buyer within thirty days of the vehicle's delivery. K.S.A. 8–135(c)(7). Section 8–135(c)(7) provides in pertinent part:

> It shall be unlawful for any person to buy or sell in this state any vehicle required to be registered, unless, at the time of delivery thereof or at a time agreed upon by the parties, not to exceed 30 days, inclusive of weekends and holidays, after the time of delivery, there shall pass between the parties a certificate of title with an assignment thereof. The sale of a vehicle required to be registered under the laws of this state, without assignment of the certificate of title, is fraudulent and void, unless the parties shall agree that the certificate of title with assignment thereof shall pass between them at a time other than the time of delivery, but within 30 days thereof. . . .

It is well-settled that the provisions relating to certificates of title, including section 8–135, are to be literally interpreted and strictly enforced. *In re Littlejohn,* 519 F.2d 356, 358 (10th Cir.1975). Defendant admits that it did not formally assign the certificate of title to plaintiff after entering into the installment contract for the sale of the BMW. Under a literal interpretation of section 8–135, the installment contract is fraudulent and void.

Defendant attempts to avoid this outcome by arguing that it effectively complied with the statute when it delivered the certificate of title to plaintiff at the inception of his original lease. The certificate of title transferred to plaintiff at the beginning of his lease showed the owner of the BMW to be

"Security Pacific Credit Corp. c/o Randy Griffin." Defendant argues this title accurately represented plaintiff's ownership interest in the BMW as a lessee and as a conditional vendee under the installment sale contract. Because the title was both valid and accurate, defendant argues that section 8–135 did not require a formal assignment of title. The court disagrees.

Defendant's argument requires the court to interpret section 8–135 as creating an exception to fit this case. The court will not do so. Not only has the Kansas Supreme Court ruled that this section is to be read literally, it has applied section 8–135 to a conditional vendee such as plaintiff. The supreme court has held that "even if a buyer is a conditional vendee, and thus is an 'owner' as defined by the statute, that fact does not free him or the vendor from the regulatory provisions of the act relating to registration, sale and transfer of a motor vehicle." *Maryland Cas. Co. v. American Family Ins. Group*, 199 Kan. 373, 429 P.2d 931, 936 (1967). Accordingly, defendant's conduct does not satisfy K.S.A. 8–135, nor does it represent an exception to its registration requirements. The installment contract signed November 17, 1989 is fraudulent and void under Kansas law, and summary judgment is denied as to this issue.

### C. The Alleged Oral Contract

Defendant next argues that plaintiff is unable to establish the existence of an oral contract due to the Kansas statute of frauds and the parol evidence rule. Because the court has ruled that any contract—written or oral—for the sale of the BMW is fraudulent and void under the Kansas Consumer Protection Act, defendant's arguments are moot.

### D. Liability for Misconduct of Collection Agencies

"It is clear that the [Kansas Consumer Protection Act] does apply to debt collection activities when engaged in by a creditor or his agent." *Miller v. Midwest Serv. Bureau of Topeka, Inc.*, 229 Kan. 322, 623 P.2d 1343, 1345 (1981). However, "[a]s a general rule, when a person (a contractee) lets out work to another and reserves no control over the work or workmen, the relation of contractee and independent contractor exists, and not

that of master and servant, and the contractee is not liable for the negligence or improper execution of the work by the independent contractor." *Falls v. Scott*, 249 Kan. 54, 815 P.2d 1104, 1109 (1991).

An independent contractor is defined as one who, in exercising an independent employment, contracts to do certain work according to his own methods, without being subject to the control of his employer, except as to the results or product of his work. The primary test used by the courts in determining whether the employer-employee relationship exists is whether the employer has the right of control and supervision over the work of the alleged employee, and the right to direct the manner in which the work is to be performed, as well as the result which is to be accomplished. It is not the actual interference or exercise of the control by the employer, but the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor.

*Id.* at 1112 (citing *Wallis v. Secretary of Kan. Dept. of Human Resources*, 236 Kan. 97, 689 P.2d 787 (1984)).

Although the right of control test is the most important single consideration in determining the relationship, it is not exclusive—other relevant factors are also to be considered. Factors tending to show an independent contractor relationship include whether there is an agreement for a definite period of time; whether the employer has power to terminate the employment at any time; and the manner of payment—payment by the hour or the day is more indicative of an agency relationship, while payment by the job is more indicative of an independent contractor relationship.

*McDonnell v. Music Stand, Inc.*, 20 Kan. App.2d 287, 886 P.2d 895, 899 (1994). "Where the facts are undisputed or the evidence is susceptible of only a single conclusion, it is a question of law for the court whether one is an employee or an independent contractor. However, generally speaking, the question of whether an individual is an employee or an independent contractor is

considered a question of fact for the jury or trier of facts." *Falls,* 815 P.2d at 1112.

■ Defendant claims that the collection agencies were independent contractors over which defendant had no control. Plaintiff contends that the collection agencies were acting as agents under defendant's direct control. Plaintiff argues that defendant's control is evident from the fact defendant "assigned" his account to Coast in January 1993, but when Coast failed to achieve the desired results, defendant resumed its status as creditor and "re-assigned" the account to Global. In other words, defendant hired Coast as an agent, ended the agency relationship, and then hired Global to finish the job. When viewing these facts in a light most favorable to plaintiff, defendant's ability to regain its rights to collect on plaintiff's debt creates a genuine issue of material fact concerning the amount of control defendant had over the collection efforts. Summary judgment is denied as to this issue.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion for summary judgment (Doc. 63) is denied.

The clerk shall mail copies of this order to counsel of record.

**IT IS SO ORDERED.**