(886 P.2d 895)
No. 71,238

STARR MCDONNELL and ANDREW MCDONNELL, by and through his next friend, STARR MCDONNELL, *Appellants*, v. THE MUSIC STAND, INC., *Appellee*.

Opinion filed December 16, 1994.

*Donald L. Hochanadel* and *Ruth L. Landau*, of Overland Park, for appellants.

*Barry E. Warren* and *Tina A. Smith*, of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, for appellee.

Before GERNON, P.J., ELLIOTT, J., and JOHN W. WHITE, District Judge, assigned.

ELLIOTT, J.: Starr and Andrew McDonnell appeal the trial court's granting of The Music Stand's motion for summary judgment as to all of their tort claims against The Music Stand.

We affirm in part, reverse in part, and remand.

This case is somewhat disjointed factually. The Music Stand leases and sells musical instruments and contracted with Malcolm Goods to collect its past due accounts and to repossess instruments. Starr McDonnell's former husband rented a saxophone from The Music Stand for their son, Andrew. This account was among those given to Goods for collection.

Goods contacted Starr by phone, claiming to be with the sheriff's department, requested payment, and threatened to put her ex-husband in jail. Goods phoned Starr three times in one day and demanded the name of Andrew's school. Goods then went to Andrew's school, telling the band teacher he was with the sheriff's office and that he was there to repossess the saxophone. Goods also threatened to throw the teacher in jail.

Starr and Andrew sued Goods and The Music Stand, each claiming separately that Goods committed the tort of outrage and violated the Fair Debt Collection Practices Act, 15 U.S.C. 1692 *et seq.* (1988). They also claimed separately that The Music Stand negligently hired Goods, negligently supervised Goods, negligently retained Goods, committed the torts of outrage and intentional infliction of emotional distress, and violated the Fair Debt Collection Practices Act. The Music Stand counterclaimed against Starr for the unpaid rent on the horn.

The Music Stand moved for summary judgment on all claims against it, which the trial court granted. At the hearing on The Music Stand's motion, plaintiffs conceded they had no basis for their claim that The Music Stand had violated the Fair Debt Collection Practices Act.

One week later, the remaining claims against Goods and the counterclaim by The Music Stand against Starr were tried to the court. Neither Goods nor The Music Stand appeared at this trial.

The trial court entered a default judgment in favor of Starr and Andrew against Goods and entered a default judgment on the counterclaim in favor of Starr against The Music Stand.

This appeal follows.

Plaintiffs' first argument may be summarized thus: In granting The Music Stand summary judgment, the trial court found Goods' conduct was not outrageous. Then, a week later, the trial court entered judgment against Goods, finding his conduct *was* outrageous. They argue, therefore, the trial court in effect revised the earlier judgment in favor of The Music Stand. But, as The Music Stand points out, nothing in the record indicates the trial court intended to revise its earlier judgment.

A review of plaintiffs' claims may prove helpful at this point. Plaintiffs alleged in their amended petition that Goods committed the torts of outrage and intentional infliction of emotional distress. They further alleged The Music Stand committed the torts of outrage and intentional infliction of emotional distress. The allegations against The Music Stand were that it committed these acts separately and independently of Goods' actions.

Plaintiffs, however, further alleged that "at all times Malcolm E. Goods was acting as the agent of and in the pursuit of the interests of The Music Stand, Inc." Then, they incorporated this allegation into their counts against The Music Stand, thereby impliedly alleging The Music Stand was vicariously liable for the counts alleged against Goods.

In its journal entry granting The Music Stand summary judgment, the trial court stated:

"The substance of the defendant Music Stand's motion for summary judgment centers upon the issues of whether or not the conduct of the defendant Goods was such as would support a cause of action on behalf of the plaintiffs for the tort of outrage and intentional infliction of emotional distress. In the event this court should find that such conduct by defendant Goods does support a claim for the tort of outrage an additional issue arises as to whether or not that tortious conduct by the defendant Goods may be imputed to the separate defendant Music Stand, Inc."

After reviewing the facts of the case, the trial court then ruled:

"When viewed in a light most favorable to the plaintiffs herein, the allegations of fact supportive of this legal theory [do] not constitute conduct so outrageous in character, so extreme in degree as to go beyond the bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society. Accordingly, the defendant Music Stand's Motion for Summary Judgment dismissing the plaintiff's cause of action for outrage and intentional infliction of emotional distress is sustained."

Unfortunately, the trial court did not specifically indicate whose conduct was not outrageous—Goods' or The Music Stand's. But from the trial court's introductory remarks, it appears to us the trial court must have found that *Goods'* conduct was not outrageous.

A couple of problems arise from the trial court's apparent finding that Goods' conduct was not outrageous. *First,* if the trial

court found Goods' conduct not outrageous when it granted The Music Stand summary judgment, its finding a week later that Goods' conduct *was* outrageous is inconsistent.

Regardless of the trial court's intent, the two judgments are inconsistent and, therefore, cannot stand. See *State v. Meyer*, 17 Kan. App. 2d 59, Syl. ¶ 4, 832 P.2d 357 (1992). While the present case is a civil bench trial, we conclude the rationale of *Meyer* is equally applicable:

"The rationale for permitting inconsistent jury verdicts is simply not applicable to a bench trial under these circumstances. There can be no argument that the inconsistency is the result of compromise or any effort to achieve unanimity [among jurors] with a bench trial. A trial court is bound by fundamental principles of logic and has a duty to explain its decisions. Our system simply has more tolerance of inconsistencies where a jury is concerned. A trial court is duty bound to apply the law in a nonarbitrary or capricious manner. A rule which would permit judgments which cannot be defended upon a logical basis would not enhance respect for the law, the courts, or the process. For an appellate court to uphold such a judgment, which on its face is illogical or arbitrary, would likely undermine respect for the courts." 17 Kan. App. 2d at 70.

Extending *Meyer* to civil bench trials is also consistent with Kansas' policy on inconsistent verdicts in civil jury trials where the jury is asked to render special verdicts. Special verdicts must be consistent with one another and cannot be conflicting. See *Donnini v. Ouano*, 15 Kan. App. 2d 517, 525, 810 P.2d 1163 (1991).

While the trial court's inconsistent findings as to whether Goods' conduct was outrageous are impermissible, a question remains as to the appropriate remedy. The later judgment that Goods' conduct *was* outrageous is not before us: Goods is not a party to this appeal and, therefore, does not challenge that judgment against him; plaintiffs do not challenge that later judgment. Accordingly, the question of Goods' conduct as found by the trial court in the later judgment is simply not before us.

The *only* issue before us on the claims of outrage against The Music Stand is the trial court's ruling on the earlier summary judgment motion. And because we cannot let the inconsistent judgments remain intact, the summary judgment ruling that Goods' conduct was not outrageous must be reversed.

The *second* problem regarding the trial court's summary judgment ruling is that it simply never determined whether The Music Stand's independent conduct was or was not outrageous. In this regard, the parties' arguments as to whether The Music Stand's independent conduct was outrageous are irrelevant because the trial court has yet to determine that issue. The issue must therefore be remanded for further proceedings.

Other issues raised by plaintiffs deal with whether Goods was an independent contractor or an agent of The Music Stand. The trial court found Goods was an independent contractor, relying on *Falls v. Scott*, 249 Kan. 54, Syl. ¶ 7, 815 P.2d 1104 (1991).

Although the right of control test is the most important single consideration in determining the relationship, it is not exclusive— other relevant factors are also to be considered. *Jones v. City of Dodge City*, 194 Kan. 777, 781, 402 P.2d 108 (1965). Factors tending to show an independent contractor relationship include whether there is an agreement for a definite period of time; whether the employer has power to terminate the employment at any time; and the manner of payment—payment by the hour or the day is more indicative of an agency relationship, while payment by the job is more indicative of an independent contractor relationship. 194 Kan. at 781.

The undisputed facts are that Goods and The Music Stand entered into an "agent contract," which always referred to Goods as an agent. The contract provided that Goods would be paid $25 for every instrument repossessed and 30% of all cash or checks collected. It also provided that Goods would be paid $7.50 for every account turned over to Goods which proved not to be past due. The contract was effective for one year, but either party could cancel the contract on 30 days' notice. Outside the contract, Goods was instructed The Music Stand preferred cash to repossessed instruments.

While the contract used the term "agent," The Music Stand did not have any right to control how Goods would make the collection; nothing in the contract indicates Goods was to follow any certain procedures when collecting accounts for The Music Stand.

Further, Goods was to be paid by the job, not by the hour or day. The Music Stand could terminate the contract before the end of the stated period, but this power was equally conferred on Goods. And since the contract required a 30-day notice, termination at will was not permitted.

Plaintiffs argue that because Goods was told The Music Stand preferred cash, this indicates control over Goods' collection methods. This instruction merely goes to the *results* of Goods' work, not to the *method* of collection. An employer is allowed to control the results of an independent contractor's work.

Finally, plaintiffs argue that Goods' failure to return The Music Stand's files to it after repeated requests is somehow a relevant factor to consider. Frankly, Goods' failure to return files on request demonstrates a distinct *lack* of control over Goods.

Under the undisputed facts and the guidelines of *Falls* and *Jones*, we hold the evidence was susceptible to only one conclusion: Goods was an independent contractor, and the trial court properly so held. See 15A Am. Jur. 2d, Collection and Credit Agencies § 2 (absent special circumstances, a collection agency is an independent contractor).

Plaintiffs finally argue the trial court erred in entering summary judgment on their claims that The Music Stand negligently hired, supervised, and retained Goods. Here, plaintiffs argue The Music Stand should have investigated Goods' background in making collections; it should have instructed or educated Goods in proper collection practices; and The Music Stand knew Goods' collection practices were illegal and, therefore, should have fired him.

Kansas does recognize the tort of negligently hiring or retaining an employee in the master-servant/agent context. See *Plains Resources, Inc. v. Gable*, 235 Kan. 580, 682 P.2d 653 (1984). But whether that cause of action will lie with respect to the hiring of an independent contractor in this state appears to be a question of first impression.

However, we did touch on the question in *Dillard v. Strecker*, 18 Kan. App. 2d 899, Syl. ¶¶ 1, 3, 861 P.2d 1372 (1993), *aff'd* 255 Kan. 704, 877 P.2d 371 (1994), where we held that when an employer breaches a duty owed, that employer is liable only for

injuries to third parties, not for injuries to an independent contractor's employees.

In *Dillard*, we noted that § 409 of the Restatement (Second) of Torts (1965) provides a general rule that a landowner is not liable for injuries caused by the negligence of an independent contractor, with three exceptions. One of those exceptions is where the employer is negligent in selecting, instructing, or supervising the contractor. 18 Kan. App. 2d at 902-03.

In *Dillard*, we also discussed *Ray v. Schneider*, 16 Conn. App. 660, 548 A.2d 461 (1988), which held that the liability of an employer for negligently hiring an independent contractor only extended to innocent third persons. 18 Kan. App. 2d at 905-06.

Many other jurisdictions recognize this cause of action. See generally, Annot., 78 A.L.R.3d 910. Finally, in *Dillard*, we noted the cause of action is recognized by the Restatement (Second) of Torts § 411 (1965), which provides:

"An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor

(a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or

(b) to perform any duty which the employer owes to third persons."

We adopt the rule stated in Restatement (Second) of Torts § 411 as the law of Kansas. We now must decide whether the trial court properly granted The Music Stand's summary judgment motion on the claims of negligent hiring, etc. Frankly, the trial court did not address the issue. Rather, it stated:

"The final cause of action is the plaintiffs' claims that Music Stand is liable for its negligence in the hiring, supervising, and retention of Goods. A determination as to whether or not such a cause of action lies against the defendant Music Stand under the factual situation in the instant case may be made as a matter of law and turns upon this court's determination of the legal relationship between Music Stand and Goods."

The trial court, finding Goods was an independent contractor, then found this claim against The Music Stand must fail.

Under the Restatement, the claim that The Music Stand negligently hired, supervised, and retained Goods must, nonetheless,

fail because plaintiffs neither pled nor proved any *physical harm* from Goods' conduct. Interestingly, illustration 1 under Comment *a* of § 411 of the Restatement describes a store that sells musical instruments and contracts with a collection agency to collect past due accounts. The Restatement indicates the store is liable for the *physical injury* the collection agency's employee causes when the employee unjustifiably knocks down and seriously injures the debtor.

Because plaintiffs neither pled nor proved any physical harm from Goods' conduct, we affirm the trial court's grant of summary judgment on this claim, under the "right for any reason" rule. See *Bank of Kansas v. Davison*, 253 Kan. 780, 792, 861 P.2d 806 (1993).

We emphasize that at the summary judgment hearing, plaintiffs conceded they had no basis for their claim against The Music Stand for a violation of the Fair Debt Collection Practices Act.

In summary, we hold the trial court entered improper inconsistent judgments when it first found Goods' conduct was not outrageous and then later found that it was. And the trial court simply did not consider the question of whether The Music Stand's independent conduct was or was not outrageous.

The trial court properly found that Goods was an independent contractor and properly applied the Restatement (Second) of Torts § 411 in ruling plaintiffs' negligence claim must fail because plaintiffs neither pled nor proved any physical harm resulting from Goods' conduct.

Affirmed in part, reversed in part, and remanded for further proceedings.