Pablo Cesar URENA, Plaintiff,

v.

CAPANO HOMES, INC. and Mun Seok Lee and Mun Seok Lee t/a Rising Sun Contractors Co. and Rising Sun Contracting Co. and Rising Sun Contractors Co. and Rising Sun Contractors, Inc., and Muirfield Associates, LLC, Defendants.

C.A. No. 04C–11–018 SCD.

Superior Court of Delaware, New Castle County.

Submitted: March 28, 2006.
Decided: June 2, 2006.
Corrected: June 6, 2006.

I. Barry Guerke, Parkowski, Guerke & Swayze, Dover, DE, Mark J. LeWinter, and James A. Keating, Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, P.C., Philadelphia, PA, for the plaintiff.

David G. Culley, Tybout, Redfearn & Pell, Wilmington, DE, for defendants Capano Homes, Inc. and Muirfield Associates, LLC.

Jeffrey M. Weiner, Law Offices of Jeffrey M. Weiner, P.A., Joseph A. Gabay, Maron & Marvel, Wilmington, DE, for Capano Homes, Inc.

Stephen P. Casarino, Casarino, Christman and Shalk, Wilmington, DE, for defendants Mun Seok Lee, Mun Seok Lee t/a Rising Sun Contractors, Co., Rising Sun Contracting Co., and Rising Sun Contractors, Inc.

## OPINION

### DEL PESCO, J.

Defendants have filed motions for summary judgment, contending that the factual record does not support the claims against them for negligence, and for negligent hiring. I have concluded that no factual issues preclude summary judgment as to Muirfield and Capano Homes. There are factual issues related to Rising Sun which preclude summary judgment.

## FACTS

In 1999, the construction of 139 single-family lots began at the Preserve at Lafayette Hills ("the Preserve") by Capano Homes, Inc. ("Capano Homes").[1] Capano Homes was retained by landowner, Muirfield Associates, LLC ("Muirfield") to complete the construction project and act as general construction manager of the Preserve. Joseph M. Capano ("Capano") is 99% owner of both Capano Homes and Muirfield.

Capano Homes's construction manager for the Preserve was Raymond Worrall ("Worrall"). Worrall worked for Capano Homes for almost six years prior to the commencement of the Preserve project.[2] He was responsible for all construction paperwork including permits, drawings, fieldwork, as well as bids and subcontracts. Worrall was responsible for hiring subcontractors with input and/or approval from Capano.

Initially, Capano Homes hired Martin Contractors ("Martin"), a subcontractor, to perform roofing and siding work at the Preserve. Martin soon became unable to handle the workload at the Preserve. Worrall contacted Mun Seok Lee ("Lee"), owner of Rising Sun Contractors ("Rising Sun"), to take over the roofing and siding work. Lee testified that he received a message from Worrall one evening in October 2002, and was asked to report to the Preserve the next day.[3] Worrall stated that prior to hiring Rising Sun, he inquired with ARK Contractors and S.G. Williams, two companies that previously had worked

---

1. Joseph M. Capano was deposed on Apr. 20, 2005. Reference to that testimony will be cited as "Capano at ——." Raymond Worrall was deposed on Apr. 20, 2005. Reference to that testimony will be cited as "Worrall at ——." Capano at 14–16; Worrall at 11–12.

2. Worrall at 7.

3. There appears to be conflicting testimony as to when Rising Sun began working at the Preserve. Mun Seok Lee was deposed on Apr. 22, 2005. References to that testimony will be cited as "Lee at ——." Lee at 35–36; Capano at 74.

with Rising Sun, as to Rising Sun's reputation for workmanship and as to whether it had appropriate insurance coverage for construction work.[4] Safety was not a part of this inquiry. Capano Homes had not previously hired and/or worked with Rising Sun.

On November 10, 2002, Worrall, on behalf of Capano Homes, signed a subcontract with Lee, on behalf of Rising Sun, to complete all siding and roofing projects at the Preserve. Rising Sun agreed to provide all materials and labor for the roofing project, and to be solely responsible for supervising its employees working at the Preserve. The subcontract delegated responsibility for Federal, OSHA and EEO safety compliance to Rising Sun.[5] The Contract contained the following relevant terms:

1. The SUBCONTRACTOR agrees that all work and/or materials will be in compliance with all state and local codes, ordinances and regulations, including but not restricted to Federal, OSHA and EEO Requirements.

* * *

5. It is agreed that the SUBCONTRACTOR while having to comply with all requirements and conditions set forth in this agreement, is an independent contractor in all respects. As such the SUBCONTRACTOR is solely responsible for his employees, including payroll taxes, benefits and insurance. The SUBCONTRACTOR is also responsible for all of his materials and equipment brought on the job site.

* * *

9. The SUBCONTRACTOR shall procure and maintain during the life of the Contract, the insurance coverage's outline in Section # 10—Insurance Requirements. A Certificate evidencing such insurance coverage must be submitted to the CONTRACTOR prior to authorization to start work.

More than two years prior to signing the contract with Capano Homes, Rising Sun had executed a written contract with Jose Felix Hernandez ("Hernandez") to provide all labor, supervision and tools to perform roofing and siding jobs acquired by Rising Sun. This written agreement between Rising Sun and Hernandez was dated January 30, 2000. Capano Homes was unaware of the contractual relationship between Rising Sun and Hernandez.[6]

### The Preserve Worksite

Various supervisors, from each of the contracting parties herein, were present at the Preserve.[7] The most consistently present supervisor on site was Charles Chambers ("Chambers"). Chambers worked for Capano Homes as the superintendent assigned to the Preserve. Chambers described his job capacity as overseeing the quality of construction, compliance with specifications, payroll issues, overall safety and scheduling subcontractors. Chambers, Worrall and Capano each testified that Chambers was also responsible

---

4. Worrall at 18–20.

5. The contract between Rising Sun and Capano Homes is located in the Appendix to Plaintiff's Answering Brief, Vol. 3, B1065.

6. Capano at 107; Worrall at 64.

7. There is testimony by Urena, Meza, Son, Lee, and Chambers suggesting that Lee had

been to the site, and that Son was perhaps more frequently on site and had occasionally told the roofers what to do. There is testimony that Romero was on site most of the time to guide workers. Also, Chambers was at the site consistently to observe and make sure everything, including subcontractors, were on schedule.

for overall safety oversight.[8] That is, Chambers was to ensure that subcontractors were working safely and in compliance with OSHA standards.[9]

On several occasions Chambers observed roofers, employed by Rising Sun, working without fall protection. Chambers reported these observations to Worrall, his supervisor. Worrall told Chambers he would take care of the problem. After Chambers contacted Worrall a second time to report his observations of unsafe behavior by the roofers, he also contacted Chang Soo "Jason" Son ("Son"), Lee's field assistant at the Preserve. After noting no change in safety procedures, Chambers again contacted Son and threatened to fire Rising Sun if his workers did not comply with safety standards.[10]

Lee hired Son as a field assistant at the Preserve to ensure OSHA compliance by the roofing laborers. Son recalls being told by Chambers that workers were not wearing their harnesses and that non-compliance with the use of fall protection would result in Rising Sun's termination from the site. Son immediately informed Miguel Romero ("Romero"), Hernandez's on-site job supervisor, that workers were to wear their safety harnesses. Son testified that he never saw a worker without a safety harness while he was working at the Preserve. Plaintiff, Pablo Cesar Urena's ("Urena" or "plaintiff") co-worker, Ricardo Picado Meza ("Meza"), testified that Son was regularly on the job site and would observe the workers and instruct them as to how to do their job.[11] Both Urena and Meza testified that the roofers never wore safety harnesses at this job site.

### The Accident

On January 21, 2003, plaintiff fell from a rooftop at the Preserve's Construction Project and sustained serious injuries.[12] At that time, plaintiff, a Costa Rican national, was a twenty-two year-old illegal alien.[13] He had been employed as a roofer for approximately six years.[14] Prior to the accident, plaintiff had worked for Hernandez for three years doing various roofing jobs.[15] On January 21, 2003, plaintiff arrived at the Preserve at his usual time in a van provided by his employer, Hernandez. The van contained the necessary tools the men were to use on the roofing project, including safety harnesses. The building supplies were provided on site by Rising Sun.

On the morning of January 21, 2003, plaintiff was working on a roof with Meza, preparing the roof for shingle application. Rather than wear safety harnesses, which they described as uncomfortable and cumbersome, they nailed several 2 by 4's to the roof with four-inch nails, to protect

---

**8.** Charles B. Chambers was deposed on May 18, 2005. Reference to that testimony will be cited as "Chambers at ——." Chambers at 5, 16–17; Worrall at 35; Capano at 46–47.

**9.** Chambers at 57–58.

**10.** *Id.* at 34, 44.

**11.** Ricardo Picado Meza was deposed on Apr. 21, 2005. Reference to that testimony will be cited as "Meza at ——." Meza at 45–47.

**12.** Plaintiff's complaint alleges Urena sustained serious injuries to his spinal cord, a severe closed right femur fracture, permanent loss of bowel and bladder control, loss of sexual function and other serious injuries.

**13.** Pablo Cesar Urena was deposed on May 18, 2005. Reference to that testimony will be cited as "Urena at ——." Urena is still an illegal alien. He recently obtained an international license, but remains a Costa Rican citizen. Urena at 8–10.

**14.** *Id.* at 12.

**15.** *Id.* at 13–14.

them from falling.[16] They laid paper on the roof in preparation for laying shingles. Plaintiff was carrying a box of shingles across the roof when he slipped and dropped the box from his hands. The box slid down the side of the roof, broke through a 2 by 4 and fell to the ground. Plaintiff slid behind the box, through the gap in the 2 by 4's and fell 30 feet to the ground. He does not recall exactly what happened after his fall, other than that he was unable to feel his limbs. Another worker at the Preserve called an ambulance.[17]

## STANDARD OF REVIEW

The standard of review for summary judgment requires that the Court consider all facts in a light most favorable to the non-moving party, and determine whether there is a genuine issue of material fact requiring a trial.[18] When a motion for summary judgment is supported by evidence showing no material issues of fact, the burden shifts to the nonmoving party to demonstrate that there are material issues of fact requiring trial.[19]

## DUTY TO EMPLOYEE OF INDEPENDENT CONTRACTOR

Plaintiff contends that Muirfield, Capano Homes and Rising Sun are liable in negli-

gence for his injuries. The claim rests on the common law. In order to be held liable in negligence, plaintiff must prove that the defendants had a legal duty to protect him from the type of harm that caused his injury. Whether a duty exists is a question of law.[20]

■ There is no dispute that Muirfield had a contract with Capano Homes, and Capano Homes had a contract with Rising Sun. Rising Sun, in turn, had a contract with Hernandez. Plaintiff was an employee of Hernandez. "[A]n employer of an independent contractor is not liable for injuries caused by the independent contractor's negligence in the performance of his work." [21] Plaintiff argues an exception to that rule.[22]

### Active Control Test

■ An owner or general contractor has a duty to protect an independent contractor's employees when the owner or contractor "retains active control over the manner in which the work is carried out and the methods used." [23] Active control is not inferred from the mere retention by the owner or contractor of the right to inspect or supervise the work to ensure conformity with the contract.[24]

### *Muirfield*

■ There no evidence that anyone associated with Muirfield exercised any con-

16. *Id.* at 22–24, 39.

17. *Id.* at 39–40.

18. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

19. *Moore v. Sizemore*, 405 A.2d 679 (Del. 1979).

20. *Li v. Capano Builders, Inc.*, C.A. No. 97–549–SLR, 1999 WL 191570, at *2 (D.Del. Mar. 26, 1999).

21. *Bowles v. White Oak, Inc.*, C.A. No. 86C–AP–107, 1988 WL 97901, at *2 (Del.Super.Ct.

Sept. 15, 1988); Restatement (Second) of Torts § 409 (1965).

22. *Bowles v. White Oak, Inc.*, 1988 WL 97901, at *2.

23. *Li v. Capano Builders, Inc.*, 1999 WL 191570, at *3 (citing *O'Connor v. Diamond State Tel. Co.*, 503 A.2d 661, 663 (Del.Super.Ct.1985)).

24. *Seeney v. Dover Country Club Apartments, Inc.*, 318 A.2d 619, 621 (Del.Super.Ct.1974).

trol over any activities of Rising Sun, or Hernandez, or their employees.

### Capano Homes

■ Plaintiff claims that the record provides sufficient facts to create a factual issue as to whether Capano Homes exercised sufficient control over the work he did to give rise to a duty of care. Plaintiff notes that Capano Homes's agent, Chambers, was consistently present at the job site and directed Rising Sun as to where and when to work.

The record reveals that Chambers was present at the Preserve on an almost daily basis, and that he oversaw the entire worksite. Chambers has testified that on more than one occasion he observed roofers working without fall protection, and responded by informing his supervisor, Worrall, as well as the supervisor of Rising Sun, Son, of his observations. He spoke to Son because Chambers was unaware of the subcontract between Rising Sun and Hernandez. Chambers never spoke directly with Hernandez's agent, Romero, regarding fall protection, or with the individuals doing the roofing work.

Plaintiff places great reliance on *Cook v. E.I. DuPont.*[25] *Cook* is distinguishable. At the summary judgment stage, the court found, viewing the facts in a light most favorable to the plaintiff, that there was evidence suggesting that the defendant had interjected itself into the day-to-day operations of the independent contractor in a manner sufficient to raise a factual issue as to duty.[26] The case was tried nonjury. What had appeared to be evidence of active control, e.g. imposition of safety

conditions, at trial were shown to be such things as the requirement of safety helmets, safety glasses, restricted smoking and eating areas, and the like. The court found the evidence to prove generalized safety rules, not rules particularized for the independent contractor, and not evidence of direct control over the method and manner of the actual work. The court ruled that the defendant had no duty to the employee of an independent contractor.[27] The type of considerations which defeated summary judgment in *Cook*, are not present in this case.

There are no facts which demonstrate involvement by Capano Homes with the method and manner of work sufficient to impose a duty of care on Capano Homes. Chambers' observations are "examples of general superintendence rather than active control." [28]

### Rising Sun

■ Rising Sun denies any active control over the method or manner of the work contractually undertaken by Hernandez. Pursuant to its contract, Rising Sun supplied the roofing materials, and Hernandez supplied the tools and the laborers. Rising Sun maintains that there is no evidence that it undertook the responsibility for the safety of Hernandez's employees. Rather, the responsibility was with Hernandez, who signed a contract with Rising Sun, warranting that his work would be performed in compliance with OSHA and other safety regulations.

The record reveals that Rising Sun's manager, Son, had occasional contact with

---

25. *Cook v. E.I. DuPont de Nemours and Co.,* No. 99C–01–023, 2001 WL 1482685 (Del.Super.Ct. Aug. 20, 2001).

26. *Id.* at *4.

27. *Cook v. E.I. DuPont de Nemours and Co.,* C.A. No. 99C–01–023JRJ, 2003 WL 21246544, at *4 (Del.Super.Ct. May 30, 2003).

28. *Jin v. Double S. Developers,* C.A. No. 98C–03–229WCC, 2000 WL 33114336, at *3 (Del.Super.Ct. Nov. 8, 2000).

Hernandez's roofing workers, including plaintiff. The instruction related primarily to scheduling. Plaintiff testified that "[t]here were days when [Son] would want us to stop doing what we were doing and go to another house or another construction ... He would tell us that when there was something wrong, what we had to do to fix it." [29] But the example of fixing it did not involved method or manner, but rather instruction to go back and put a collar over a pipe which had been installed by the plumbers after the roof was installed.[30] Plaintiff's co-worker, Meza, testified that Son did not tell them how to do the work on this job,[31] although he had at another job.[32] Plaintiff testified that he was generally the person in charge of the work.[33]

The evidence presented raises an issue of material fact sufficient to preclude summary judgment.

## Work Area Control Test

 Plaintiff relies on another exception to the general rule of no duty to the employee of an independent contractor, noting that the law may impose a duty on an owner or general contractor if "it retained possessory control over the work premises during the work." [34] The possessory control exception arises "in situations where multiple employers have employees working in the same general area ... i.e., a large construction site where at any given time numerous independent contractor employers may have several hundred or thousand employees working in overlapping areas." [35] Plaintiff asserts that because Capano Homes employed laborers who worked on the ground below the area in which Plaintiff was working, it retained sufficient control generally over the job site to render it jointly responsible for proper safety regulation.[36]

As near as I can discern, this argument is based entirely on the comment in plaintiff's deposition that after he fell, "[he] was yelling for help because that day it was only my friend Ricardo who was [on] the roof and an American who was in the house picking up trash." [37]

The possessory control exception has no application here. Only plaintiff and a co-worker were on the roof when plaintiff fell. Only their conduct is involved in this action. There was no overlapping of work areas.

The evidence relied upon by the plaintiff is legally insufficient to give rise to a factual issue on this theory of duty.

## Voluntary Assumption of Responsibility for Safety

 Plaintiff contends that Muirfield, Capano Homes and Rising Sun have a duty to him because they voluntarily as-

---

**29.** Urena at 26.

**30.** *Id.* at 25–28.

**31.** Meza at 48.

**32.** *Id.* at 45.

**33.** Urena testified at his deposition:
Q. Who was in charge of the work?
A. Almost always myself. Everybody knew how to do their own. The only thing we had to do was insure that the work was well *done, that is right.*
Urena at 34.

**34.** *Bryant v. Delmarva Power & Light Co.,* C.A. No. 89C–08–070, 1995 WL 653987, at *22 (Del.Super.Ct. Oct. 2, 1995).

**35.** *Rabar v. E.I. DuPont de Nemours & Co., Inc.,* 415 A.2d 499, 504 (Del.Super.1980).

**36.** *See* Plaintiff's Answering Brief at 12–13.

**37.** Urena at 39.

sumed responsibility for workplace safety. Those who have responsibility for workplace safety must take reasonable steps to ensure the safety of those at the worksite. A duty to ensure such safety can be imposed upon a party who "by agreement or otherwise undertakes responsibility for implementing the required safety measures." [38]

The contract between Muirfield and Capano Homes is silent regarding safety. The contract between Capano Homes and Rising Sun imposes on Rising Sun certain safety-related obligations. Rising Sun "agrees that all work and/or materials will be in compliance with all state and local codes, ordinances and regulations, including but not restricted to Federal, OSHA and EEO Requirements." [39] The contract also provides that the agreement may not be assigned. [40] In the contract between Rising Sun and Hernandez, Hernandez (Subcontractor) represents that it "has knowledge of all OSHA ... requirements pertaining to the work to be performed." [41] It further provides that it will comply with all OSHA requirements and it "shall not permit any of the work to be performed in violation of such requirements." [42]

 There is no factual issue regarding the conduct of either Muirfield or Capano Homes. In the contract between Capano Homes and Rising Sun, Rising Sun accepts responsibility for safety. Likewise, the contract between Rising Sun and Hernandez gives Hernandez responsibility for safety, even though the obligations acquired by Rising Sun cannot be assigned. Rising Sun maintained an obligation to provide for the security of the people doing the roofing work.

The conduct of Capano Homes, through Chambers, does not suggest that Capano Homes accepted any responsibility for the conduct of the workers of an independent contractor. When Chambers observed unsafe roofing practices, he expressed his concerns to his supervisor Worrall, and on one or two occasions, to Son, who was on site for Rising Sun. Chambers did not speak to the roofing workers directly. Chambers conduct is inconsistent with voluntary assumption of responsibility of safety.

As to observations of unsafe practices, the court in *Bryant* held that a "property owner does not voluntarily assume responsibility for workplace safety by advising his independent contractor of observed safety violations where the independent contractor is contractually required to maintain workplace safety." [43]

The evidence is legally insufficient to create a factual issue as to Muirfield and Capano Homes. A fact issue as to Rising Sun has been demonstrated.

### Negligent selection of Rising Sun

 Plaintiff also argues that Muirfield and Capano Homes are liable under a theory of negligent hiring. Delaware has adopted the tort of Negligence in Selection of a Contractor, Restatement (Second) of Torts § 411. [44] It provides:

**38.** *Figgs v. Bellevue Holding Co.*, 652 A.2d 1084, 1092 (Del.Super.Ct.1994).

**39.** The contract between Rising Sun and Capano Homes is located in the Appendix to Plaintiff's Answering Brief, Vol. 3, B1065–66.

**40.** *Id.* at 1066.

**41.** *Id.* at 1068.

**42.** *Id.*

**43.** *Bryant v. Delmarva Power & Light Co.*, 1995 WL 653987, at *11.

**44.** *See Li v. Capano Builders, Inc.*, 1999 WL 191570, at *17.

An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor

(a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or

(b) to perform any duty which the employer owes to third persons.[45]

██ Delaware decisions have held that employees of independent contractors have standing to sue under § 411.[46] Those decisions have been followed in at least one federal court decision relying on Delaware law.[47] Other jurisdictions have reached a different conclusion.[48] Until recently, there has been no guidance from the Delaware Supreme Court on the issue. *In Re: Asbestos Litigation* provides that guidance.[49] *In Re:* considers § 343,[50] a provision of the Restatement related to a landowner's liability to the business invitees who are exposed to asbestos fibers while working on landlord's premises.[51] The decision focuses specifically on the rights of two different groups of workers: the employees who suffered injuries caused by the conduct of another independent contractor, and the employees who suffered injuries caused by their own work on the landlord's premises.[52] The Supreme Court ruled that the first group had a cause of action under § 343, but that the second group did not. The Court referenced the general rule that the employer of an independent contractor is not liable for injuries suffered by the "contractor or his employees who have contracted to perform the work which causes the injury."[53] The Court concluded that "the employees of an independent contractor may not invoke § 343 of the Restatement to establish landowner liability for injuries caused by conditions created by their independent contractor-employer."[54] The public policy consideration is the same here. A "third person" for purposes of § 411 does not include an employee of an independent contractor.

Plaintiff's injury was the result of working on a rooftop without wearing the fall protection that was available to him. As

**45.** Restatement (Second) of Torts § 411 (1965).

**46.** *Fisher v. Reid*, Civ. A. Nos. 94C–08–002, 93C–07–001, 1996 WL 453444, at *5–6 (Del.Super.Ct. June 19, 1996); *Bowles v. White Oak, Inc.*, 1988 WL 97901, at *3.

**47.** *See Li v. Capano Builders, Inc.*, 1999 WL 191570, at *17–18.

**48.** *See Hess v. Upper Mississippi Towing Corp.*, 559 F.2d 1030, 1033 (5th Cir.1977); *Camargo v. Tjaarda Dairy*, 25 Cal.4th 1235, 108 Cal. Rptr.2d 617, 25 P.3d 1096, 1101 (2001).

**49.** *In Re: Asbestos Litigation*, Nos. 100, 2005; 101, 2005; 102, 2005; 106, 2005; 107, 2005; and 137, 2005 (consolidated), 2006 WL 1214980, 2006 Del. Lexis 230 (Del. Apr. 12, 2006).

**50.** § 343 Dangerous Conditions Known to or Discoverable by Possessor

A possessor of land is subject to liability for physical harm to his invitees by a condition on the land if, but only if, he
(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
(c) fails to exercise reasonable care to protect them against the danger.

**51.** *In Re: Asbestos Litigation*, 2006 WL 1214980, at **1, 2006 Del. Lexis 230, at *1.

**52.** *Id.* at **1, 3, 2006 Del. Lexis 230 at *1, 11.

**53.** *Id.* at **3, 2006 Del. Lexis 230 at *11.

**54.** *Id.* at **3, 2006 Del. Lexis 230 at *13.

the employee of an independent contractor, plaintiff does not have a claim against the general contractor Capano Homes, that hired the subcontractor (Rising Sun), that hired another subcontractor (Hernandez) that hired him. Likewise, the landowner, Muirfield, has no liability as a landowner for the reasons stated in *In Re*.

## CONCLUSION

The Motion for Summary Judgment on behalf of Muirfield and Capano Homes is GRANTED as to all claims of negligence.

The Motion for Summary Judgment on behalf of Rising Sun is DENIED as there remain factual issues regarding Rising Sun's active control and voluntary assumption of responsibility for safety. The issues raised in the motions not addressed in this decision are either moot, or deferred.