(172 P.3d 49)
No. 97,740

JOHN F. and WYNEMA M. DYE, as Surviving Parents and Personal Representatives of the ESTATE of JONATHAN DYE, Deceased, *Appellants,* v. WMC, Inc., d/b/a WESLEY MEDICAL CENTER, *Appellee,* and ETHAN HAUPTMAN, as Surviving Spouse and Personal Representative of the ESTATE of JENNIFER HAUPTMAN, Deceased, *Appellant,* v. WMC, Inc., d/b/a WESLEY MEDICAL CENTER. *Appellee.*

Opinion filed November 16, 2007.

*Scott J. Gunderson,* of Nelson Gunderson & Lacey, of Wichita, and *Jerome L. Skinner,* of Nolan Law Group, of Cincinnati, Ohio, for appellants.

*Robert W. Cotter* and *Patrick J. Kaine,* of Dysart Taylor Lay Cotter & McMonigle, P.C., of Kansas City, Missouri, for appellee.

Before HILL, P.J., GREEN and MARQUARDT, JJ.

GREEN, J.: In these wrongful death actions, the decedents, Jonathan Dye, a medical technician, and Jennifer Hauptman, a registered nurse, were fatally injured when their air ambulance crashed near Dodge City, Kansas.

The air ambulance was returning to the Dodge City Regional Airport after delivering a patient to Wesley Medical Center in Wichita, Kansas. Jonathan's parents, John F. Dye and Wynema M. Dye, and Jennifer's husband, Ethan Hauptman, each brought a wrongful death action against WMC, Inc., doing business as Wesley Medical Center (Wesley). These actions were later consoli-

dated. Wesley moved to dismiss both lawsuits, maintaining that the petitions failed to state a cause of action against Wesley. The trial court agreed and dismissed the actions. On appeal, the plaintiffs contend that the district court prematurely dismissed their petitions. We agree.

To sustain the district court's granting of Wesley's motions to dismiss, this court would have to conclude that, under plaintiffs' pleadings, the plaintiffs could not produce any evidence justifying some form of relief. Although it seems doubtful whether plaintiffs will be able to establish sustainable claims against Wesley, that is not the question. Any doubt in this regard must have ripened into certainty concerning the untenability of plaintiffs' positions. Currently, whether plaintiffs are entitled to any relief can hardly be said to be beyond question.

As discussed later in this opinion, plaintiffs may produce a set of facts in support of one or more of their claims which would entitle them to relief. Whether any such claims exist should be left to the development of the facts through discovery rather than summarily decided on the pleadings. As a result, we determine that the plaintiffs' petitions should not have been dismissed for failure to state a claim. Accordingly, we reverse and remand.

The action arises out of an airplane crash on February 17, 2004. The airplane was a Beech B90 operated by Ballard Aviation, Inc. (Ballard), as an air ambulance. The plane was returning to Dodge City Regional Airport after delivering a patient from Mercy Hospital of Independence, Kansas (Mercy), to Wesley in Wichita, Kansas. The crash killed the pilot and two passengers, Jennifer Hauptman and Jonathan Dye.

On February 16, 2006, John and Wynema Dye sued Wesley and Mercy in Sedgwick County District Court. The same day, Ethan Hauptman sued the same defendants in the same court. The Dyes' petition, in relevant part, stated:

"3. [Wesley] contracts for air ambulance services with [Ballard], and has done so on a continuous and systematic basis since 2001.

. . . .

"6. The accident which is the subject of this action occurred during a flight from Wichita Mid-Continent Airport (ICT), Wichita, Kansas, en route to Dodge

City, Kansas (DDC), after the delivery of a patient from Mercy Hospital of Independence, Kansas to the Wesley Medical Center, Wichita, Kansas.

"7. The pilot and medical crew of EagleMed 4 had contact with the agents, employees and representatives of both Defendants prior to the accident.

. . . .

"8. On February 17, 2004 at about 2:57 am. CST, a Beech B90, registered as N777KU, operated by [Ballard] as EagleMed 4, was destroyed by impact with terrain and post impact fire, approximately 7 nautical miles (nm) west of Dodge City Regional Airport (DDC), Dodge City, Kansas. The pilot and the two passengers onboard were fatally injured. One of the passengers was Plaintiffs John F. and Wynema M. Dye's decedent and son, Jonathan Dye, a medical crew member, working while onboard the aircraft.

. . . .

"15. As a direct and proximate result of the aforesaid circumstances, Jonathan Dye was caused to suffer massive blunt force trauma and died as a result of severe injuries and the post crash fire and destruction of the aircraft.

## "I. NEGLIGENCE OF DEFENDANT WMC, INC. d/b/a/ WESLEY MEDICAL CENTER

"16. Plaintiffs adopt and re-allege paragraphs 1-15 with the same force and effect as if fully set forth herein.

"17. [Wesley] had a contract for exclusive vending of air ambulance services with the Dodge City, Kansas base for [Ballard]. As a result of that contract and on the basis of custom and usage, [Wesley] failed to perform adequate oversight of [Ballard] operations when it knew or should have known the following:

a. [Ballard] maintained a pilot base and pilot employee pool that utilized pilots up to the full amount of hours permitted for flight duty time for 14 CFR Part 91 and Part 135 air operations.

b. [Wesley] was aware that the dispatch procedures utilized by [Ballard] were new as of January 1, 2004 and the technology was new while the dispatch personnel were not qualified to act as dispatchers or trained to adequately use the equipment.

c. [Wesley] knew or should have known that the lack of experience, training and qualification of the [Ballard] dispatchers and [Ballard] dispatch department would result in the dispatch of aircraft with pilots who were fatigued and near the limit of their permissible legal duty time.

d. [Wesley] knew or should have known that the aircraft utilized by [Ballard], including EagleMed4, on February 17, 2004, a Beech B90 registered as N777KU, did not utilize terrain avoidance system technology because their flight operations were a combination of Part 91 and Part 135 medical service operations.

e. [Wesley] knew or should have known that fatigue and pilot duty hour considerations were so severe at [Ballard] that medical personnel onboard aircraft flights were known to handle aircraft flight duties and responsibilities in order to provide relief for fatigued pilots.

f. On February 17, 2004, [Wesley's] employees, agents and representatives witnessed the fatigue of EagleMed 4's pilot and negligently failed to warn the pilot and his passengers of the known risks of piloting an aircraft without adequate rest in a fatigued condition, a duty assumed by the defendant as a user of air ambulance services and as a party familiar with [Ballard's] operational standards.

"18. As a result of [Wesley's] knowledge, contractual responsibilities and custom and usage, the defendant owed a duty to the passengers, patients and medical personnel onboard [Ballard] flights including EagleMed 4 on February 17, 2004, to exercise reasonable and thorough oversight of its business operations that related to air ambulance services and to cease air ambulance services with [Ballard] until such practices that were indicative of pilot fatigue issues were stopped.

"As a result of the defendant [Wesley's] negligence and breach of duty, the Plaintiffs' decedent, Jonathan Dye, was caused to suffer severe blunt force trauma injuries resulting in his death.

"**WHEREFORE**, as a direct and proximate cause of the crash and destruction of the flight designated EagleMed 4, a Beech B90 registered as N777KU, and by the negligent failure of oversight by the defendant, [Wesley], plaintiffs' decedent suffered a wrongful death and Plaintiffs were caused to suffer pecuniary and non-pecuniary injuries including but not limited to: loss of income, loss of income potential, loss of society and companionship and loss of all other relationship damages consistent with the laws of the State of Kansas. Plaintiffs pray the Court enter judgment in their favor for such damages, attorneys' fees and costs to which they may be entitled."

The allegations in the petition filed by Hauptman were identical to those in the Dyes' petition, except for the substitution of Ethan Hauptman as the plaintiff and Jennifer Hauptman as the decedent.

On April 3, 2006, Mercy filed answers to both lawsuits. On April 26, 2006, plaintiffs and Mercy filed stipulated entries of dismissal in both cases, dismissing Mercy without prejudice.

On May 5, 2006, Wesley moved to dismiss both lawsuits. As with the petitions, the motions to dismiss were substantially the same except for plaintiffs' names. Wesley argued that plaintiffs' allegations of negligence failed to state a claim because they failed to show that Wesley owed any duty to the decedents as employees of Ballard, an independent contractor hired by Wesley to perform air ambulance services.

On August 30, 2006, the two lawsuits were consolidated for discovery purposes. On September 25, 2006, plaintiffs filed a consolidated memorandum in opposition to the motions to dismiss. Plaintiffs argued that the decedents actually acted as employees of

Wesley because of Wesley's day-to-day control of their work, but that even if decedents were independent contractors of Wesley, Wesley should still be liable for its "breach of FAA regulations." Plaintiffs maintained that Wesley breached its "duty of care" and that it was negligent in its hiring of the independent contractor. Plaintiffs attached several exhibits to their memorandum, including the petitions, a copy of the contract between Wesley and Ballard, copies of the depositions of two Wesley employees, an Internet article from the Wichita Eagle, and an "Aviation Special Investigation Report" regarding emergency medical services aviation operations.

Wesley filed a reply supporting its motions to dismiss. On October 26, 2006, the trial court granted the motions. The journal entry, in relevant part, stated:

"In reaching its decision, the Court has reviewed the following:

"1. Motion to Dismiss of Defendant Wesley Medical Center and Memorandum in Support filed in Case No. 06 CV 0733;

"2. Motion to Dismiss of Defendant Wesley Medical Center and Memorandum in Support filed in Case No. 06 CV 0734;

"3. Plaintiffs' Memorandum in Opposition to Defendant Wesley Medical Center's Motion to Dismiss;

"4. Reply in Support of Motion to Dismiss of Defendant Wesley Medical Center; and

"5. Plaintiffs' Petitions.

"The Court has also heard oral argument from the attorney for defendant Wesley Medical Center and the attorney for the plaintiffs.

### "Findings and Conclusions

"The Court accepts and adopts the factual allegations contained in plaintiffs' Petitions and views all of plaintiffs' allegations and the inferences to be drawn therefrom in the light most favorable to plaintiffs.

"The Court adopts defendant's arguments as set forth in Defendant's Motion to Dismiss and Memorandum in Support and in Defendant's Reply in Support of Motion to Dismiss as if fully set forth herein. The Court agrees with defendant that as a matter of law plaintiffs have failed to state a claim for which relief can be granted. Accordingly, the Court hereby sustains defendant's Motions to Dismiss."

*Did Plaintiffs' Petitions State a Claim under Any Possible Theory?*

On appeal, plaintiffs offer a variety of arguments to support their contention that the district court erred in dismissing their petitions.

Their arguments include that their petitions were sufficient under the notice pleading standard, that the district court "improperly decided disputed issues of fact," that the district court "refused to weigh every doubt in Plaintiffs' favor," and that the district court erred "by deciding the legal sufficiency of Plaintiffs' claims as stated in the petitions."

Wesley responds that the dispositive issue is whether Wesley owed the decedents any duty through its contract with their employer Ballard. Wesley argues that there was no duty, even accepting plaintiffs' allegations, and therefore the district court properly dismissed the petitions based upon this matter of law.

Turning to our standard of review, plaintiffs contend that "the lower court dismissed the petitions without reference to information outside the pleadings." Thus, plaintiffs assert that the proper standard of review is that for a motion to dismiss for failure to state a claim.

Wesley points out that plaintiffs included "substantial evidentiary material," including deposition transcripts and documentary evidence in opposition to the motions to dismiss, and suggests that to the extent such material was considered by the trial court, the applicable standard of review would be the standard for summary judgment.

K.S.A. 60-212(b) states: "If, on a motion [to dismiss for failure to state a claim], matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . ."

Here, plaintiffs included substantial evidentiary material with their memorandum in opposition. The district court indicated that it reviewed the memorandum in opposition before making its ruling on the motion to dismiss. Nevertheless, the district court made no specific reference to the evidentiary material, and it stated in its findings and conclusions that it accepted and adopted the factual allegations from the plaintiffs' *petitions*, before concluding that "as a matter of law plaintiffs have failed to state a claim for which relief can be granted." This indicates that the evidentiary material was not considered or relied upon by the court in granting the motions to dismiss. Thus, we determine that the more appropriate standard

of review here is that for a motion to dismiss for failure to state a claim.

When a motion to dismiss under K.S.A. 60-212(b)(6) contests the legal sufficiency of a claim, the question must be decided from the well-pleaded facts of a plaintiff's petition. *Halley v. Barnabe*, 271 Kan. 652, 656, 24 P.3d 140 (2001). A petition should not be dismissed for failure to state a claim unless, after reviewing the petition in the light most favorable to plaintiff and with every doubt resolved in plaintiff's favor, that, under plaintiff's pleadings, the plaintiff can prove no set of facts, either under plaintiff's theory or under any other possible theory in support of plaintiff's claim, which would entitle plaintiff to relief. Dismissal is justified only when the allegations of the petition clearly demonstrate plaintiff does not have a claim. 271 Kan. at 656; see *Jones v. State*, 279 Kan. 364, 366, 109 P.3d 1166 (2005).

In considering the question, the court must accept a plaintiff's description of events, along with any reasonable inferences that may be drawn therefrom. Nevertheless, the court is not required to accept conclusory allegations as to the legal effects of the events if the allegations are not supported or are contradicted by the description of events. *Halley*, 271 Kan. at 656.

The granting of such motions has not been favored by our courts, and skepticism is required where a motion to dismiss is made prior to the parties completing discovery. The petition is not intended to govern the entire course of the case. Rather, the ultimate decision as to the legal issues and theories on which the case will be decided is the pretrial order. 271 Kan. at 656-57.

The parties do not contest that this is a negligence and wrongful death action. To prevail on a negligence claim, plaintiffs must prove (1) an existence of a duty, (2) a breach of that duty, (3) an injury, and (4) a causal connection between the duty breached and the injury suffered. See *Reynolds v. Kansas Dept. of Transportation*, 273 Kan. 261, 266, 43 P.3d 799 (2002). The only element at issue in the motions to dismiss, and consequently the journal entry of dismissal, was the existence of a duty owed to the decedents by Wesley. Wesley argued, and the district court concluded, that the plaintiffs' allegations failed to show that Wesley had any duty to-

ward the decedents and, therefore, the petitions failed to state a claim.

Thus, the question is whether, given the allegations in plaintiffs' petitions, there is any theory of negligence under which Wesley owed the decedents a duty. Whether a duty exists is a question of law. *Reynolds*, 273 Kan. at 266.

Plaintiffs suggest three possible negligence theories in their appellate brief: an apparent negligence per se theory based on "Wesley's breach of FAA regulations"; a theory based on "Wesley's breach of its duty of care," which apparently refers to the negligent oversight or supervision theory set forth in the plaintiffs' petitions; and a theory based on Wesley's negligent hiring of an independent contractor (Ballard) under the Restatement (Second) of Torts § 411 (1964).

We begin by examining the negligent hiring theory. Wesley argues that plaintiffs did not allege a claim under Restatement § 411 in their petitions, so they cannot rely on it to avoid dismissal. This argument ignores Kansas' notice pleading standard and this court's responsibility to determine if the allegations in the petitions state any valid claim for relief under plaintiffs' theories or *any other possible theory*. See *Jones*, 279 Kan. at 366; *Noel v. Pizza Hut, Inc.*, 15 Kan. App. 2d 225, 234, 805 P.2d 1244, *rev. denied* 248 Kan. 996 (1991).

Generally, the employer of an independent contractor is not liable for injuries caused by the negligence of an independent contractor. Restatement (Second) of Torts § 409 (1964); see *Dillard v. Strecker*, 255 Kan. 704, 716, 877 P.2d 371 (1994). Nevertheless, there are various exceptions to this rule, including the negligence of an employer in selecting, instructing, or supervising the contractor. Restatement (Second) of Torts § 409, comment b.; *Dillard*, 255 Kan. at 716.

One such exception is found in the Restatement (Second) of Torts § 411, which states:

"An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor

(a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or

(b) to perform any duty which the employer owes to third persons."

This section was adopted by this court in *McDonnell v. The Music Stand, Inc.*, 20 Kan. App. 2d 287, 293, 886 P.2d 895 (1994), *rev. denied* 256 Kan. 995 (1995). In *McDonnell*, the plaintiffs' claims failed under this section because they did not allege physical injury. 20 Kan. App. 2d at 293-94.

Here, plaintiffs obviously alleged physical injury. The petition alleges a contractual relationship between Wesley and Ballard that could certainly qualify as an employer and independent contractor relationship. The provision of air ambulance services, as tragically demonstrated by the facts of this case, seems to be "work which will involve a risk of physical harm unless it is skillfully and carefully done." See Restatement (Second) of Torts § 411(a).

The comments to Restatement § 411 provide several illustrations of where liability may lie for the employer of an independent contractor, including the following:

"The omnibus with which A, the owner of a hotel, conveys his guests from the railway station to the hotel is damaged in a collision. A contracts with B, the owner of a garage, to carry A's guests in B's bus. A knows that C, the only driver who is available for this service, has only driven a car for a few days. While driving some of A's guests from the station, C mistakes the accelerator for the brake, which causes a collision between the bus and an automobile in which D is driving. A is subject to liability to D and to his guests in the bus for any harm cause by the unskillfulness of C." Restatement (Second) of Torts § 411, comment b, illus. 3, p. 378.

Another illustration states:

"A, a builder, employs B, a teamster, to haul material through the streets from a nearby railway station to the place where A is building a house. A knows that B's trucks are old and in bad condition and that B habitually employs inexperienced and inattentive drivers. C is run over by a truck carrying A's material and driven by one of B's employees. A is subject to liability to C if the accident is due either to the bad condition of the truck or the inexperience or inattention of the driver." Restatement (Second) of Torts § 411, comment d, illus. 5, p. 380.

Plaintiffs' petitions allege that Wesley was aware of certain deficiencies in the dispatch procedures, pilot assignment procedures, and airplane terrain avoidance technology utilized by Ballard that

were factors in the crash of Eagle Med 4. Given the above illustrations, such knowledge could show that Wesley failed "to exercise reasonable care to employ a competent and careful contractor." See Restatement (Second) of Torts § 411.

The final question is whether decedents were "third persons" as contemplated by Restatement § 411 such that they were owed a duty by Wesley in its employment of Ballard as an independent contractor. Plaintiffs contend that the district court erred in accepting Wesley's argument that decedents were employees of Ballard, an independent contractor hired by Wesley, and were therefore not "third persons" under Restatement § 411. Plaintiffs assert that there is a fact issue as to decedents' employment status.

The allegations in plaintiffs' petitions do not clearly establish the nature of the relationships between Wesley, Ballard, and the decedents. Jonathan is identified as a "medical crew member," and Jennifer is identified as a registered nurse; both are identified as passengers of the airplane, and the petitions state that both were working while onboard the airplane. Neither Jonathan nor Jennifer is specifically identified in plaintiffs' pleadings as an employee of either Wesley or Ballard. Although Wesley maintains that Jonathan and Jennifer were Ballard's employees based on plaintiffs' response to Wesley's motions to dismiss, we note that this alleged admission occurred under the argument section of plaintiffs' response. Moreover, under the same section, we note that plaintiffs argued that Jonathan and Jennifer could be considered employees or independent contractors of Wesley.

The determination of the decedents' employment status and the exact nature of the relationship between Wesley and Ballard may well determine the outcome of these lawsuits. Depending on the decedents' employment status, there are at least three possible scenarios:

First, if decedents were employees of Ballard as an independent contractor of Wesley, then they may be precluded from recovery. Restatement § 411 itself does not clarify if "third persons" includes employees of the independent contractor, but it may be noted that none of the illustrations in the comments to Restatement § 411

include a scenario in which the third person is such an employee. See Restatement (Second) of Torts § 411.

There is Kansas case law holding that an independent contractor's employees may not be considered third parties or persons in some negligence contexts. See *Dillard*, 255 Kan. at 710, 726-27 (landowner who employed independent contractor not directly liable to contractor's employee for injury sustained as a result of a breach of a nondelegable duty imposed upon the landowner by statute or ordinance, nor vicariously liable even if work being performed is of an inherently dangerous nature). Nevertheless, whether an independent contractor's employee qualifies as a third person for the purposes of Restatement § 411 seems to be a question of first impression in Kansas.

Other courts have generally held, usually for policy reasons, that an independent contractor's employee is not a third person for the purposes of Restatement § 411. See *Lipka v. United States*, 369 F.2d 288, 292-93 (2d Cir. 1966); *Castro v. Serrata*, 145 F. Supp. 2d 835, 836-37 (S.D. Tex. 2001), *aff'd* 281 F.3d 1279 (5th Cir. 2001); *Camargo v. Tjaarda Dairy*, 25 Cal. 4th 1235, 1244-45, 108 Cal. Rptr. 2d 617, 25 P.3d 1096 (2001); *Urena v. Capano Homes, Inc.*, 901 A.2d 145, 154 (Del. Super. 2006); *Mentzer v. Ognibene*, 408 Pa. Super. 578, 586-88, 597 A.2d 604 (1991); *Chapman v. Black*, 49 Wash. App. 94, 104-05, 741 P.2d 998 (1987); but see *Sievers v. McClure*, 746 P.2d 885, 891 (Alaska 1987); *Bagley v. Insight Communications Co., L.P.*, 658 N.E.2d 584, 587-88 (Ind. 1995).

Plaintiffs cite a New Mexico case imposing liability under Restatement § 411 on a hospital in a case with some factual similarities, *Talbott v. Roswell Hosp. Corp.*, 138 N.M. 189, 118 P.3d 194 (N.M. App. 2005). Nevertheless, *Talbott* is not applicable here for two reasons. First, it is not clear who employed the decedent in *Talbott*—the opinion states only that the decedent was "participating" in a training exercise conducted by the air ambulance service. 138 N.M. at 196. Second, the issues in *Talbott* concern only the nature of the relationship between the hospital and the independent contractor, not the relationship between the decedent and the others, which is the key issue here. 138 N.M. at 197.

In *Dillard,* our Supreme Court laid out several policy reasons for its decision to limit the liability of landowners to the employees of independent contractors. 255 Kan. at 725-27. These reasons are similar to those reasons set forth by several of the courts which have addressed the same question in the context of Restatement § 411. Although our Supreme Court limited its holding in *Dillard* to the facts and theories presented in that case, the policy reasons given in that case seem applicable to Restatement § 411.

Second, if the decedents were employees of Wesley rather than Ballard, then they may be precluded from recovery under the Kansas Workers Compensation statutes. See *Robinett v. The Haskell Co.,* 270 Kan. 95, 97, 12 P.3d 411 (2000) ("[U]nder K.S.A. 44-501(b), an employer is not liable in tort for any injury in which compensation is recoverable under the Kansas Workers Compensation Act.").

Third, if the decedents were passengers not employed by Wesley or Ballard, then they may be able to recover as third persons under Restatement § 411. Because at least one of the previously discussed possible results may ultimately entitle plaintiffs to relief, plaintiffs' petitions should not have been dismissed for failure to state a claim.

Reversed and remanded.